**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CLARENDON AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08-cv-03287 Judge Kennelly |
| CYPRESS PROPERTY INVESTMENTS, LLC. and CYPRESS TRACE CONDOMINIUM ASSOCIATION, INC. | ) ) ) ) ) | Magistrate Judge Brown  Removed from Circuit Court of Cook County |
| Defendants. | ) | Case No. 08 CH 15420 |

**PETITION TO REMAND**

NOW COMES the Plaintiff, Clarendon American Insurance Company, by and through its attorneys, Leahy, Eisenberg & Fraenkel, Ltd., and for its Petition to Remand pursuant to 28 U.S.C. § 1447, states as follows:

1.     On April 25, 2008, Plaintiff, Clarendon American Insurance Company (hereinafter "Clarendon"), filed a complaint for declaratory judgment against Defendants Cypress Property Investments, LLC and Cypress Trace Condominium Association, Inc. (collectively "Cypress Trace") in the Circuit Court of Cook County.  A copy of the complaint for declaratory judgment is attached hereto as Exhibit "A."

2.     On May 8, 2008, Clarendon served Cypress Trace Condominium Association through its registered agent.  A copy of the filed proof of service is attached hereto as Exhibit "B."

3.     On June 19, 2008, Clarendon served Cypress Property, a dissolved corporation, through its registered agent.  A copy of the proof of service is attached hereto as Exhibit "C."

4.    On June 6, 2008, Cypress Trace filed a Notice of Removal pursuant to 28 U.S.C. § 1441.  A copy of the Notice of Removal is attached hereto as Exhibit "D."

5.    Cypress Trace alleges that removal is proper since it involves a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332, 1441.

6.    Clarendon and Cypress Trace entered into a contract for a commercial property policy, policy number APX-PROP-00058486, with an effective period from August 31, 2005 through August 31, 2006 (hereinafter "the Clarendon Policy").  A copy of the Clarendon policy is attached to the Complaint for Declaratory Judgment (Exhibit A).

7.    This matter should be remanded to the Circuit Court of Cook County, Illinois based on the forum selection provision contained in the Clarendon policy, which states as follows:

**Forum Selection**

**At the Company's option, actions arising directly or indirectly from this policy shall be litigated in courts located within Cook County, Illinois.  Each insured under this policy (including but not limited to the Named Insured) consents to the jurisdiction of such courts and agrees not to contest such choice of forum.**

8.    The language used in the forum selection clause – "shall be litigated" – specifies venue in obligatory language.  Accordingly, this Court must enforce this provision as a mandatory provision on venue.  *Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 755 (7th Cir. 1992).

9.    The pivotal issue for purposes of deciding this motion is that when a contract contains a mandatory forum clause where the parties agree that actions shall be litigated in "courts located within" a particular county, is venue only proper in state court or can proper

venue lie in a federal court that sits in that county?  Clarendon asserts that venue is only proper in state court and that Cypress Trace has waived its right to remove the matter from state to federal court.

10.    The Seventh Circuit has not addressed this issue directly.  However, other Circuit Courts of Appeals and district courts within the Seventh Circuit, including this court, have interpreted forum selection clauses similar to the one here and concluded that where a forum selection clause specifies venue in a certain county, venue does not extend to the court of the federal judicial district in which that county lies or to the federal district court specifically sitting in that county.

11.    The Tenth Circuit addressed this issue in *Milk 'N' More, Inc. v. Beavert,* 963 F.2d 1342 (10th Cir. 1992) and in *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318 (10th Cir. 1997).  In *Milk 'N' More*, the court found the provision "venue shall be proper under this agreement in Johnson County, Kansas" strongly pointed to the state court of that county and rejected the contention that it referred to both the state court of Johnson County and the federal district court.  In *Excell*, the court concluded that where the forum selection clause stated "venue shall lie in the County of El Paso, Colorado" removal to the federal district court sitting in El Paso County was improper.

12.    The *Excell* case is particularly instrumental in resolving this issue since, as here, there is both a state and federal court geographically located in the subject county.  The underlying basis for these decisions is that for federal court purposes, venue is stated in terms of "judicial districts," not counties.  *Excell*, 106 F.3d at 321, *citing* 28 U.S.C. § 1391.

13.    District courts within the Seventh Circuit have consistently relied on the decisions in *Milk 'N' More* and *Excell* to deny removal to the federal district court under

similar circumstances. *Progressive Publications, Inc. v. Capital Color Mail, Inc.,* 500 F.Supp.2d 1004, 1005-06 (N.D.Ill. 2007); *Sompo Japan Ins., Inc. v. Alarm Detection Systems, Inc.,* 2003 WL 21877615 (N.D. Ill. 2003); *Gator Wash, LLC v. Lighthouse Carwash Systems, Inc.,* 2008 WL 506070 (S.D. Ind. 2008); and *Fieldturf USA, Inc. v. Quest Turf, LLC,* 2008 WL 906428 (S.D.Ind. 2008).

14.    Clarendon would be remiss not to bring this Court's attention to an earlier, unpublished district court opinion in *Truserv Corp. v. Prices Ilfeld Hardware, Co., Inc.*, 2001 WL 1298718 (N.D.Ill 2001), that found the language "courts located in Cook County" to be ambiguous.  The court ruled that the language should be interpreted against the author of the language and find that federal jurisdiction exists.  The Honorable Judge Milton Shadur in *Progressive* rejected the decision in *Truserv* as it lacked precedential and persuasive value. *Progressive,* 500 F.Supp.2d at 1004-5.

15.    In the event this Court were to ignore the decisions by other Circuit Courts of Appeals and the bulk of the decisions by district courts within the Seventh Circuit and adopt the minority position justifying removal to federal court, then Clarendon asks the court to consider other language contained in the forum selection clause.  Notably, the forum selection clause states that the decision to file in Cook County is Clarendon's sole right and that the insured "consents to the jurisdiction of such courts and agrees not to contest such choice of forum."  Exhibit "A."   The very act of seeking removal to federal court amounts to a challenge of Clarendon's filing in state court and must be rejected pursuant to the express wording of the forum selection clause.

16.    Clarendon further requests that this Court exercise its discretion pursuant to 28 U.S.C. § 1447(c) and order Cypress Trace to pay Clarendon's costs and any actual expenses,

including attorney fees that were incurred as a result of the removal.  In deciding whether to award costs, the key factor is the propriety of defendant's removal.  *Excell,* 106 F.3d at 322, *citing Daleske v. Fairfield Communities,* 17 F.3d 321, 324 (10th Cir.), *cert. denied* 511 U.S. 1082 (1994).  The district court does not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorney fees and costs under § 1447(c).  *Id.*

17.    This petition to remand is timely filed within thirty (30) days after the filing of the notice of removal as required by § 1447.

WHEREFORE, the Plaintiff, Clarendon American Insurance Company, requests that this Honorable Court enter an order remanding this matter back to the Circuit Court of Cook County, Illinois and ordering the Defendants, Cypress Property Investments, LLC and Cypress Trace Condominium Association, Inc., to pay Clarendon's attorneys fees and costs resulting from removal of this action.

Dated this 2nd day of July, 2008.

Respectfully submitted,


By:   s/ Heath Sherman
        Heath Sherman

Attorney for CLARENDON AMERICAN INSURANCE COMPANY

Heath Sherman
LEAHY, EISENBERG & FRAENKEL, LTD.
33 W. Monroe Street, Suite 1100
Chicago, Illinois 60603-5317
(312) 368-4554
(312) 368-4562 Fax
ARDC No. 6238084
E-Mail: hs@lefltd.com

f:\case\015501\12924\PETITION TO REMAND.doc

## CERTIFICATE OF SERVICE

I hereby certify that on **July 2, 2008**, I caused to be filed, electronically, the foregoing document with the Clerk of the United States District Court, Northern District of Illinois for the Eastern Division, using the CM/ECF system, which sent a Notice of Electronic Filing to all CM/ECF Registered Participants on **July 2, 2008**.

| | |
|---|---|
| Michael Childress<br>Childress Duffy Goldblatt, Ltd.<br>515 N. State Street, Suite 2200<br>Chicago, IL  60610<br>(312) 494-0200<br>ID Number: 6180488<br>Email:  mchildress@childresslaw.net<br>***Attorney for Cypress Trace Condominium Association, Inc.***<br><br>Edward Eshoo, Jr.<br>Childress Duffy Goldblatt, Ltd.<br>515 N. State Street, Suite 2200<br>Chicago, IL  60610<br>(312) 494-0200<br>ID Number: 6190179<br>Email:  eeshoo@childresslawyers.com<br>Email:  docketclerk@childresslawyers.com<br>***Attorney for Cypress Trace Condominium Association, Inc.***<br><br>Christina M. Phillips<br>Childress Duffy Goldblatt, Ltd.<br>515 N. State Street, Suite 2200<br>Chicago, IL  60610<br>(312) 494-0200<br>ID Number:  6287091<br>Email:  cphillips@cdglawyers.com<br>Email:  docketclerk@cdglawyers.com<br>***Attorney for Cypress Trace Condominium Association, Inc.*** | |

/s/ Heath Sherman
Heath Sherman
Leahy, Eisenberg & Fraenkel, Ltd.
33 West Monroe Street, Suite 1100
Chicago, IL 60603
Phone: (312) 368-4554

Fax: (312) 368-4562
E-mail: hs@lefltd.com
IL ARDC # 6238084

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLARENDON AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CASE NUMBER: 08 CV 03287 |
| | ) | |
| vs. | ) | ASSIGNED JUDGE: Matthew F. Kennelly |
| | ) | |
| CYPRESS PROPERTY INVESTMENTS, | ) | DESIGNATED |
| LLC, and CYPRESS TRACE CONDOMINIUM | ) | MAGISTRATE JUDGE: |
| ASSOCIATION, INC., | ) | Geraldine Soat Brown |
| | ) | |
| Defendants. | ) | |

## NOTICE OF MOTION

To:     See Attached Service List

**PLEASE TAKE NOTICE** that on **July 16, 2008** at **9:30 a.m,** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Matthew F. Kennelly in courtroom 2106, at the Everette McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois, 60604, and then and there present the attached *Petition to Remand*.

By:     s/ Heath Sherman
          Heath Sherman

## CERTIFICATE OF SERVICE

I hereby certify that on **July 2, 2008**, I caused to be filed, electronically, the foregoing document with the Clerk of the United States District Court, Northern District of Illinois for the Eastern Division, using the CM/ECF system, which sent a Notice of Electronic Filing to all CM/ECF Registered Participants on **July 2, 2008**.

| | |
|---|---|
| Michael Childress<br>Childress Duffy Goldblatt, Ltd.<br>515 N. State Street, Suite 2200<br>Chicago, IL 60610<br>(312) 494-0200<br>ID Number: 6180488<br>Email: mchildress@childresslaw.net<br>***Attorney for Cypress Trace Condominium***<br>***Association, Inc.*** | |

Edward Eshoo, Jr.
Childress Duffy Goldblatt, Ltd.
515 N. State Street, Suite 2200
Chicago, IL  60610
(312) 494-0200
ID Number: 6190179
Email:  eeshoo@childresslawyers.com
Email:  docketclerk@childresslawyers.com
***Attorney for Cypress Trace Condominium Association, Inc.***

Christina M. Phillips
Childress Duffy Goldblatt, Ltd.
515 N. State Street, Suite 2200
Chicago, IL  60610
(312) 494-0200
ID Number:  6287091
Email:  cphillips@cdglawyers.com
Email:  docketclerk@cdglawyers.com
***Attorney for Cypress Trace Condominium Association, Inc.***

/s/ Heath Sherman
Heath Sherman
Leahy, Eisenberg & Fraenkel, Ltd.
33 West Monroe Street, Suite 1100
Chicago, IL 60603
Phone: (312) 368-4554
Fax: (312) 368-4562
E-mail: hs@lefltd.com
IL ARDC # 6238084

F:\Case\015501\12924\NOM-PET TO REMAND-FEDERAL-01.doc

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

| | | |
|---|---|---|
| CLARENDON AMERICA INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  08CH15420 |
| | ) | |
| CYPRESS PROPERTY INVESTMENTS, LLC and CYPRESS TRACE CONDOMINIUM ASSOCIATION, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, CLARENDON AMERICA INSURANCE COMPANY (hereinafter "CLARENDON"), by and through its attorneys, DANIEL J. OFFENBACH, HEATH SHERMAN and LEAHY, EISENBERG & FRAENKEL, LTD., and in support of its Complaint for Declaratory Judgment against Defendants, CYPRESS PROPERTY INVESTMENTS, LLC and CYPRESS TRACE CONDOMINIUM ASSOCIATION, INC. (hereinafter "CYPRESS TRACE"), states as follows:

### BACKGROUND

1.    CLARENDON is, and at all relevant times was, an insurance company with its principal place of business in New Jersey.

2.    CLARENDON and CYPRESS TRACE entered into a contract for a commercial property policy, policy number APX-PROP-00058486, with an effective period from August 31, 2005 through August 31, 2006 (hereinafter "the

CLARENDON POLICY"). A true and correct copy of the CLARENDON POLICY is attached hereto as Exhibit "A".

3.    The CLARENDON POLICY covered six condominium buildings located in Coral Springs, Florida as further identified in the property schedule amendment endorsement. (Form ETP828-4).

4.    CYPRESS TRACE claims that on or about October 24, 2005, Hurricane Wilma hit the State of Florida, including the covered condominium buildings located in Coral Springs, Florida.

5.    On or about June 26, 2007, CYPRESS TRACE retained a public adjuster, Pete Price of Five Star Claims Adjusting, to advise and assist in the settlement of the claimed loss from Hurricane Wilma.

6.    On or about August 6, 2007, Pete Price of Five Star Claims Adjusting prepared a repair estimate for all the condominium buildings that totaled $1,099,844.20. A copy of the repair estimate is attached hereto as Exhibit "B".

7.    On or about August 24, 2007, CYPRESS TRACE and/or its public adjuster provided CLARENDON and/or its program manager and agent, APEX INSURANCE MANAGERS, INC. (hereinafter "APEX"), with notice of this loss for the first time.

8.    CYPRESS TRACE, through its public adjuster, alleges that the condominium buildings in Coral Springs, Florida sustained damage as a result of Hurricane Wilma on or about October 25, 2005.

9.    On or about September 11, 2007, Pete Price provided CLARENDON and APEX with a copy of the aforementioned repair estimate.

10.    On or about April 8, 2008, Pete Price advised CLARENDON and
APEX that it "has chosen to invoke the appraisal provision in the policy" since there
was no agreement between CLARENDON and CYPRESS TRACE as to the amount of
the necessary repairs for this alleged loss.

**FORUM & CHOICE OF LAW**

11.    The Circuit Court of Cook County, Illinois is the exclusive forum for
this action by virtue of the forum selection clause contained in the Special Coverage
Part, Part III, Section IV, paragraph 34 of the CLARENDON POLICY, which states as
follows:

**Forum Selection**

**At the Company's option, actions arising directly or indirectly from
this policy shall be litigated in courts located within Cook County,
Illinois.  Each insured under this policy (including but not limited to
the Named Insured) consents to the jurisdiction of such courts and
agrees not to contest such choice of forum.**

12.    The CLARENDON POLICY provides that this action shall be governed
by Illinois law, and states as follows:

**Choice of Law**

**This policy, and all disputes relating to the parties' obligations under
this policy, shall be interpreted, construed, governed by and
enforced in accordance with the laws of the State of Illinois.**

**FAILURE TO PROVIDE TIMELY NOTICE**

13.    Special Coverage Part, Part III, Section IV, paragraph 4 of the
CLARENDON POLICY states as follows:

**Duties of the Named Insured After a Loss:**

**In case of loss the Named Insured shall:**

3

a.   Give immediate written notice of such loss to the Company.

b.   Protect the building and personal property from further damage, make reasonable temporary repairs required to protect the property, and keep an accurate record of repair expenditures.

c.   Prepare an inventory of damaged personal property showing in detail, quantity, description, "actual cash value" and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory.

d.   Exhibit the remains of the damaged property as often as may be reasonably required by the Company and submit to examination under oath.

e.   Submit to the Company within 60 days after requested a signed, sworn statement of loss that sets forth to the best of the Named Insured's knowledge and belief: (1) the time and cause of loss; (2) Interest of the insured and all others in the property involved and encumbrances on the property; (3) Other policies of insurance that may cover the loss; (4) Changes in title or occupancy of the property during the term of the policy; (5) Specifications of any damaged building and detailed estimates for repair of the damage; (6) An inventory of damaged personal property described in c. above.

f.   Give notice of such loss to the proper police authority if loss may be due to a violation of the law.

14.   CYPRESS TRACE does not have and/or has not provided a reasonable or justifiable excuse for its delay of nearly two years in providing CLARENDON and/or APEX with notice of its claimed loss from Hurricane Wilma.

15.   CYPRESS TRACE'S failure to provide timely notice of the claimed loss has deprived CLARENDON of an opportunity to make a timely and thorough investigation of the claim after the alleged loss. CLARENDON has been prejudiced in that the covered buildings have been exposed to the elements and not properly protected

4

for the two-year period since Hurricane Wilma. Further, CLARENDON has been prejudiced in its efforts to determine with precision those damages related to Hurricane Wilma, or alternatively, those that potentially fall under certain policy exclusions.

16.     Since providing its repair estimate, CYPRESS TRACE has further breached its duty under the policy to provide CLARENDON and/or its agent APEX with complete documentation to support the claimed loss. Further, CYPRESS TRACE has provided minimal information relative to the age and origin of the damage, as well as the maintenance and repair history of the condominium buildings.

## APPRAISAL

17.     The CLARENDON POLICY contains an appraisal provision that states in pertinent part:

> **If the Named Insured and the Company fail to agree on the amount of the loss, *the Company* can demand that the amount of loss be set by appraisal. *If the Company makes a written demand for appraisal,* each party shall select a competent independent appraiser. Each party shall notify the other of the selected appraiser's identity within 20 days of the receipt of the written demand ... (emphasis added).**

18.     The right to request an appraisal is not a mutual remedy. The CLARENDON POLICY expressly provides the Company with the remedy of seeking an appraisal but does not afford this remedy to the Named Insured.

19.     CLARENDON does not wish to exercise its right to an appraisal.

## THE INSURANCE POLICY

20.     The Special Coverage Part, Part I Coverage states as follows:

> **The Company shall be liable for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Peril.**

5

## SECTION I-COVERED PROPERTY

The policy shall cover in accordance with the following descriptions of coverage:

## COVERAGE A. BUILDING(S)

Building(s) or structure(s) shall include attached additions and extensions; fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building(s); materials and supplies intended for use in construction, alteration or repair of the building(s) or structure(s); yard fixtures; personal property of the Named Insured used for the maintenance or service of the described building(s), including fire extinguishing apparatus, outdoor furniture, floor coverings and appliances for refrigerating, ventilating, cooking, dish washing and laundering (but not including other personal property in apartments or rooms furnished by the Named Insured as landlord); all while at the described premises.

## COVERAGE B. PERSONAL PROPERTY OF THE INSURED

Business personal property owned by the Named Insured and usual to the occupancy of the Named Insured, including bullion, manuscripts, furniture, fixtures, equipment and supplies, not otherwise covered under this policy, and shall also include the Named Insured's interest in personal property owned by others to the extent of the value of labor, materials and charges furnished, performed or incurred by the Named Insured; all while (1) in or on the described building(s), or (2) in the open (including within vehicles) on or within 100 feet of the described premises.

This coverage shall also include "Tenant's Improvements and Betterments" when not otherwise specifically covered.

\*          \*          \*

## SECTION II-PROPERTY NOT COVERED

This policy does not cover:

1.    Outdoor swimming pools; fences; piers, wharves and docks, beach or diving platforms or appurtenances; retaining walls not constituting a part of a building; walks, roadways and other surfaces, unless a Limit of Insurance is shown in the Declarations.

\*          \*          \*

6

6.      Land (including land on which covered property is located) or water.

21.    Part 1, Section III of the Special Coverage Part of the CLARENDON

POLICY states as follows:

> The following property is subject to these additional limitations:
>
> 1.      Hot water boilers or other equipment for heating water are not covered against loss caused by any condition or occurrence within such boilers or equipment (other than explosion of accumulated gases or unconsumed fuel within a firebox or combustion chamber.)
>
> *                 *                 *
>
> 3.      Fences . . . outdoor swimming pools and related equipment, . . . when covered under this policy, are not covered against loss caused by freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water driven by wind or not.
>
> *                 *                 *
>
> 5.      The interior of buildings is not covered against loss caused by rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless (a) the buildings shall first sustain an actual damage to roof or walls by the direct action of wind or hail, and then the Company shall be liable for loss to the interior of the buildings as may be caused by rain, snow, sleet, ice, sand or dust entering the buildings through openings in the roof or walls made by direct action of wind or hail; ...
>
> *                 *                 *

22.    Part 3 of the Special Coverage Part of the CLARENDON POLICY

insures the covered buildings as follows, in pertinent part:

**SECTION I – COVERED PERILS**

**This policy insures against risks of direct physical loss, unless the loss is excluded in SECTION II –EXCLUSIONS below subject to the**

7

provisions and stipulations herein and in the policy of which this form is made a part.


## SECTION II – EXCLUSIONS

The Company will not pay for loss, damage, cost or expense of any nature caused directly or indirectly by, resulting from, arising out of, contributed to, aggravated by, or in any way connected with any of the following.  Such loss or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss.

1.  The enforcement of any ordinance or law regulating the use, repair, construction, or demolition of buildings, structures or property, including debris removal expenses.

*          *          *

3(b)  Flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

3(c)  Water, sewage or any other liquid substance which backs up through, or overflows from, sewers, drains or sumps;

3(d)  Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors . . .

*          *          *

7.  Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment or appliances (except fire protection systems) caused by or resulting from freezing, unless the Named Insured shall have exercised due diligence with respect to maintaining heat in the buildings or unless such equipment and appliances had been drained and the water supply shut off.

*          *          *

9(a)    Weather conditions.  However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in this section to produce the loss.

9(c)    Faulty, inadequate or defective: . . .

> (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling or grading compaction; . . .

> (4)    Maintenance;

> Of part or all of any property on or off the described premises.

*        *        *

12(a)   Wear and tear; marring or scratching; deterioration; rust or corrosion; mold; wet or dry rot; inherent vice or latent defect . . . mechanical breakdown, including rupture or bursting caused by centrifugal force; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings; . . . dampness or dryness of atmosphere; or changes in extremes of temperature.  But if loss by fire, smoke . . . or water not otherwise excluded ensues, then this policy shall cover only such ensuing loss.  If loss by water not otherwise excluded ensues, this policy shall also cover the cost of tearing out and replacing any part of the building covered required to effect repairs to the plumbing, heating or air conditioning system or domestic appliances but excluding loss to the system or appliance from which the water escapes.

12(d)   Continuous or repeated seepage or leakage of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance which occurs over a period of weeks, months or years.

*        *        *

17.     Rain, snow, ice, or sleet to property in the open.

23.    CLARENDON and/or its agent APEX have investigated this claimed loss in a timely manner and have made a good-faith effort to resolve the claim with its insured CYPRESS TRACE.

24.    CLARENDON, through its agent APEX, retained an independent adjuster to assist in investigating and resolving this claim. The claimed damages could not be reasonably attributed to wind from Hurricane Wilma, on or about October 24, 2005.

25.    The damages and repairs alleged by CYPRESS TRACE resulted from events or conditions that pre-date October 24, 2005 and/or that the CLARENDON POLICY specifically excludes, including but not limited to wear and tear, faulty repair, lack of maintenance, and other items all as more specifically identified in the CLARENDON POLICY and set forth in paragraph 22, *supra*.

26.    Alternatively, a determination of whether certain damages are covered or excluded could not be made due to the two-year period that elapsed from Hurricane Wilma to the time CYPRESS TRACE provided CLARENDON and/or APEX with first notice of the loss.

## RELIEF

27.    An actual controversy exists between Plaintiff and Defendant, herein, and by the terms and provisions of 735 ILCS 5/2-701, this court is vested with the power to declare the rights and liabilities of the parties hereto and to grant such other and further relief as may be necessary.

WHEREFORE, Plaintiff, CLARENDON AMERICA INSURANCE COMPANY, respectfully requests that this court:

a)  Determine and adjudicate the rights and liabilities of the parties hereto;

b)  Find and declare that there is no coverage based on CYPRESS TRACE's breach of its duty to provide timely notice to CLARENDON and/or APEX,

c)  Find and declare that there is no coverage based on CYPRESS TRACE's failure to properly protect the covered premises to allow CLARENDON to conduct a timely and thorough investigation of the covered premises

d)  Find and declare that there is no coverage based on CYPRESS TRACE's failure to provide complete documentation to CLARENDON;

e)  Find and declare that CYPRESS TRACE is not entitled to seek an appraisal;

f)  Find and declare that the policy does not afford coverage for the losses claimed by CYPRESS TRACE pursuant to exclusions contained in the CLARENDON POLICY; and/or

g)  Grant such other and further relief as this court sees fit and proper under the evidence and circumstances.

Respectfully submitted,

LEAHY, EISENBERG & FRAENKEL, LTD.

By: _____
        Heath Sherman

Heath Sherman
LEAHY, EISENBERG & FRAENKEL, LTD.
33 W. Monroe Street, Suite 1100
Chicago, Illinois 60601-3288
(312) 368-4554
Attorney No. 45875
F:\Case\015501\12924\COMPLAINT.doc

# CERTIFICATION OF POLICY AND ENDORSEMENTS ATTACHED WITHIN

To Whom It May Concern:

It is hereby affirmed that the following attached information is a true and complete copy of the policy issued to Cypress Property Investments, LLC; Cypress Trace Condominium Association, Inc., Policy number APX-PROP-0008486.

_____

Jeffrey Longbons
Executive V.P. of Underwriting

The Named Person above appeared before me on 17th day of April 2008

Witnessed: _____

```
OFFICIAL SEAL
ADRIENNE L KERWIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/09/09
```



## CERTIFICATION

Based solely on the information available in the underwriting file maintained by Apex Insurance Managers, LLC for Policy Number APX-PROP-00058486, Jeffrey Longbons, Senior Vice President, Underwriting, - of Apex Insurance Managers, LLC, certifies that the attached policy issued to Cypress Trace Condominium Association, Inc., is a true and correct copy of the policy effective August 31, 2005 to August 31, 2006 including all applicable forms, as prepared from the documents available from the underwriting file

_____(signature)

Jeffrey Longbons
Senior Vice President Underwriting

STATE OF ILLINOIS

COUNTY OF COOK

Jeffrey Longbons, Senior Vice President Underwriting– Apex Insurance Managers, LLC personally came before me this ___17th___, day of ___April___, 2008 and executed this certification in his capacity as an employee of the Apex Insurance Manager, LLC.

_____
Notary Public
My commission expires: _8/9/09_

```
OFFICIAL SEAL
ADRIENNE L KERWIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/09/09
```

# CLARENDON AMERICA INSURANCE COMPANY

**POLICY NUMBER:** APX-PROP-00058486

RENEWAL OF POLICY NUMBER APX-PROP-00047242

## COMMERCIAL PROPERTY DECLARATIONS

*THE APPLICATION SHALL BECOME A PART OF AND BE INCORPORATED INTO THIS POLICY.*

**NAMED INSURED AND MAILING ADDRESS:**

Cypress Property Investments, LLC; Cypress Trace Condominium Association, Inc.
c/o Andres Perez
2850 Douglas Road - Penthouse
Coral Gables, FL 33134

The Named Insured is a Limited Liability Corporation

**BUSINESS DESCRIPTION:** Condominiums

**POLICY PERIOD:** From 8/31/2005 12:01 A.M. To 8/31/2006 12:01 A.M. Local Time
at the address of First Named Insured stated above.

| | |
|---|---|
| **COVERED PREMISES:** | See Property Schedule PSC307 |
| **COMMERCIAL PROPERTY COVERAGES:** | See Property Schedule PSC307 |
| **MORTGAGEE:** | See Property Schedule PSC307 |

**PREMIUM:**

Commercial Property Premium   (Premium does not include Surplus Lines Taxes)        $28,810

See **SCHEDULE OF FORMS AND ENDORSEMENTS (PSC309)** for the forms and endorsements incorporated as part of this policy at the time of issuance.

In witness whereof, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Dr. Detlef Steiner, President                    Gary Ketels, Secretary

# Clarendon America Insurance Company

### POLICY NUMBER: APX-PROP-00058486

RENEWAL OF POLICY NUMBER APX-PROP-00047242

## COMMERCIAL PROPERTY SCHEDULE

**I. NAMED INSURED:** Cypress Property Investments, LLC; Cypress Trace Condominium Association, Inc.

**2. BUSINESS DESCRIPTION:** Condominiums

**3. POLICY PERIOD:** From 8/31/2005 12:01 A.M. To 8/31/2006 12:01 A.M. Local Time
at the address of First Named Insured stated above.

**4. COVERED PREMISES:**

| LOC. | BLDG. | ADDRESS | OCCUPANCY |
|---|---|---|---|
| 1 | 1 | 11767-97 N.W. 30th Street, Coral Springs, FL 33065 | Condominiums |
| 1 | 2 | 3000-3022 N.W. 117th Avenue, Coral Springs, FL 33065 | Condominiums |
| 1 | 3 | 3024-3038 N.W. 117th Avenue, Coral Springs, FL 33065 | Condominiums |
| 1 | 4 | 3023-3037 N.W. 117th Avenue, Coral Springs, FL 33065 | Condominiums |
| 1 | 5 | 3011-3021 N.W. 117th Avenue, Coral Springs, FL 33065 | Condominiums |
| 1 | 6 | 3039-3045 N.W. 117th Avenue, Coral Springs, FL 33065 | Condominiums |

**5. COMMERCIAL PROPERTY COVERAGES:**

| LOC. | BLDG. | COVERAGE | $ LIMITS OF INSURANCE | COVERAGE PART/ COVERED PERILS | COINSURANCE/ MONTHLY LIMITATION | VALUATION BASIS |
|---|---|---|---|---|---|---|
| 1 | 1 | Building(s) | 1,004,898 | Special | 80 | RC |
| 1 | 2 | Building(s) | 780,508 | Special | 80 | RC |
| 1 | 3 | Building(s) | 531,458 | Special | 80 | RC |
| 1 | 4 | Building(s) | 531,458 | Special | 80 | RC |
| 1 | 5 | Building(s) | 462,684 | Special | 80 | RC |
| 1 | 6 | Building(s) | 290,220 | Special | 80 | RC |

*3,601,226    3% = 108,036.78*

**6. MORTGAGEE:**

| LOC. | BLDG. | NAME AND ADDRESS | INTEREST |
|---|---|---|---|
| | | | |

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following forms and endorsements apply to this policy:

**Declarations and Other**

| | | |
|---|---|---|
| PDC802 | 0103 | Commercial Property Declarations |
| PSC307 | 0103 | Commercial Property Schedule |
| PSC309 | 0103 | Schedule of Forms and Endorsements |
| PWA222 | 0103 | Representations and Warranties |

**Property**

| | | |
|---|---|---|
| PCV301 | 0103 | Special Coverage Part |
| PDE313 | 0103 | Property Deductible Endorsement |
| POE327 | 0103 | "Replacement Cost" Endorsement |

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

**Company:** Clarendon America Insurance Company

**Policy Number:** APX-PROP-00058486

**Named Insured:** Cypress Property Investments, LLC; Cypress Trace Condominium Association, Inc.

**This endorsement is effective:** 8/31/2005

# BREACH OF REPRESENTATIONS AND WARRANTIES ENDORSEMENT

This endorsement modifies insurance under the following:

## NAMED PERILS COVERAGE PART

## SPECIAL COVERAGE PART

The Named Insured understands and agrees that the following representations and warranties are material and that the Company is relying on the truthfulness of these representations and warranties, which are made the basis of and a condition for the Company's acceptance of the risks covered by this insurance. The Named Insured further understands and agrees that if any of the following material representations and warranties are false, or if the Named Insured fails to comply with any of the following representations and warranties at any time during the **"policy period"**, the Named Insured shall be deemed to have breached this insurance policy. A breach of any of the following representations and warranties will result in this policy not applying to any **"claim"** or **"suit"** brought hereunder.

A. The Named Insured hereby represents and warrants that the following are true and correct as of the inception date of the policy:

  1. The information contained in the Application(s) is a just, full and true exposition of all the facts and circumstances with regard to the risk to be insured.

  2. No **"claims"** have been made nor have any **"suits"** been filed against you or any other insureds in the past five (5) years other than as disclosed in the Application(s) submitted to us.

  3. There have been no losses in the past five (5) years other than as disclosed in the Application(s) submitted to us.

  4. There are no facts, acts, incidents, injuries, or other circumstances which may result in a **"claim"** or **"suit"** against you or any other insureds.

B. The Named Insured further represents and warrants that the following are true and correct as of the inception date of the policy and will remain so at all times during the **"policy period"**:

  1. The Insured premises, including but not limited to all buildings, structures and parking lots, are in compliance with all federal, national, state and local codes and/or requirements as respects fire, life safety (including, but not limited to: the National Fire Protection Association Life Safety Code Standard 101), occupancy and building construction, maintenance, reconstruction, restoration and/or repair.

  2. There are operable smoke detectors in each unit, office, utility/laundry room and storage area.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

**Company:** Clarendon America Insurance Company                     **Policy Number:**  APX-PROP-00058486

**Named Insured:** Cypress Property Investments, LLC; Cypress Trace Condominium Association, Inc.

**This endorsement is effective:** 8/31/2005

BRW (REV 01-01-2003)                                Page 1 of 1

**Endorsement Form Number:**  PWA222

# PROPERTY DEDUCTIBLE ENDORSEMENT

The deductible applicable to each enumerated property coverage shown in the Declarations shall be in the amount of $2,500.  The Company's liability is understood to be in excess of the deductible amount for each enumerated coverage.

The deductible shall apply separately to each coverage enumerated in the Declarations; as such, more than one deductible may apply to a single **"occurrence"**.

Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this policy shall be as follows:

Windstorm or Hail:  3% of Total Insured Value, per occurrence

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

**Company:** Clarendon America Insurance Company

**Policy Number:** APX-PROP-00058486

**Named Insured:** Cypress Property Investments, LLC; Cypress Trace Condominium Association, Inc.

**This endorsement is effective:** 8/31/2005

# "REPLACEMENT COST" ENDORSEMENT

**This endorsement applies only to item(s) of insurance specified in the Declarations, or by endorsement, as being subject to this "Replacement Cost" (RC) Valuation Basis.**

1. **"Replacement cost"** replaces the term **"actual cash value"** wherever it appears in this policy, subject to the provisions of this endorsement and of the policy to which this endorsement is attached.

2. This endorsement shall not apply to stock (raw, in process or finished) or merchandise, property of others, household furniture or residential contents; or to manuscripts; or to paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glassware and bric-a-brac, or other articles of art, rarity or antiquity.

3. The Company shall not be liable under this endorsement for any loss unless and until the damaged or destroyed property is actually repaired or replaced by the insured with due diligence and dispatch.

4. **Coinsurance Clause.**

   The Company shall not be liable for a greater proportion of any loss to the property covered than the limits of insurance specified in the Declarations, or by endorsement, for such property bears to the amount produced by multiplying the **"replacement cost"** of such property at the time of the loss by the coinsurance percentage applicable (specified in the Declarations, or by endorsement), nor for more than the proportion which this policy bears to the total insurance thereon.

   In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the total amount of insurance applicable to the property involved at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required, providing, that nothing herein shall be construed to waive application of the first paragraph of this clause.

   If the coverage under this policy is divided into two or more items, the foregoing shall apply separately to each item to which this endorsement applies.

5. The insured may elect to make claim under this policy in accordance with its provisions, disregarding this endorsement. The insured may make further claim for any additional liability brought about by this endorsement in accordance with its provisions; provided the Company is notified in writing within 90 days after loss of the insured's intent to make such further claim.

6. The Company's liability for loss on a **"replacement cost"** basis shall not exceed the smallest of the following amounts:

   a. The Limits of Insurance shown in the Declarations applicable to the damaged or destroyed property;

   b. The **"replacement cost"** of the property or any part thereof identical with such property on the same premises and intended for the same occupancy and use; or

   c. The amount actually and necessarily expended in repairing or replacing said property or any part thereof.

---

**Company:** Clarendon America Insurance Company

**Policy Number:** APX-PROP-00058486

**Named Insured:** Cypress Property Investments, LLC; Cypress Trace Condominium Association, Inc.

**This endorsement is effective:** 8/31/2005

# "REPLACEMENT COST" ENDORSEMENT

7.  **Apportionment Clause.**

    The Company shall not be liable under this policy including this endorsement for a greater proportion of any loss than the amount of this policy applying to the property to which this endorsement applies bears to the total amount of insurance on such property against the peril involved, whether or not such other insurance includes the extension of coverage provided under this endorsement, and whether such other insurance is collectible or not.

8.  If the coverage on property under this policy is divided into two or more items, all of the foregoing shall apply separately to each item to which this endorsement applies.

9.  **Definitions.**

    **"Replacement Cost" (RC)** means the cost of repair or replacement without deduction for depreciation.


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

---

**Company:** Clarendon America Insurance Company

**Policy Number:** APX-PROP-00058486

**Named Insured:** Cypress Property Investments, LLC; Cypress Trace Condominium Association, Inc.

**This endorsement is effective:** 8/31/2005

REPLACECOST (REV 01-01-2003)      Page 2 of 2      Endorsement Form Number: POE327

# COMMERCIAL PROPERTY SCHEDULE AMENDMENT ENDORSEMENT

The COMMERCIAL PROPERTY SCHEDULE (PSC307) SECTION 4. COVERED PREMISES LOC. 1-6 BLDG. 1 is deleted in its entirety and replaced with the following:

**4. COVERED PREMISES:**

| LOC. | BLDG. | ADDRESS | OCCUPANCY |
|------|-------|---------|-----------|
| 1 | 1 | 11767-97 N.W. 3Oth Street, Coral Springs, FL 33065 | Condominiums |
| 1 | 2 | 3000-3022 Coral Ridge Drive, Coral Springs, FL 33065 | Condominiums |
| 1 | 3 | 3024-3838 Coral Ridge Drive, Coral Springs, FL 33065 | Condominiums |
| 1 | 4 | 3023-3037 N.W. 1 18th Drive, Coral Springs, FL 33065 | Condominiums |
| 1 | 5 | 3011-3021 N.W. 1 18th Drive, Coral Springs, FL 33065 | Condominiums |
| 1 | 6 | 3039-3045 N.W. 1 18th Drive, Coral Springs, FL 33065 | Condominiums |

·ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Company: Clarendon America Insurance Company

Named Insured: Cypress Trace Condominium Association, Inc.

This endorsement is effective: 5/26/2O06

CH-AMEND (REV 01-01-2003)　　　Page 1 of 1

Policy Number:   APX-PROP-00058486

Endorsement Number: 4

Date Issued: 7/3/2006

Endorsement Form Number:   ETP828-4

# DECLARATIONS AMENDMENT ENDORSEMENT

The COMMERCIAL PROPERTY DECLARATIONS (PDC802), SECTION 1. NAMED INSURED AND MAILING ADDRESS is deleted in its entirety and replaced with the following:

## 1. NAMED INSURED AND MAILING ADDRESS:

Cypress Trace Condominium Association, Inc.
c/o Denise Brugman
P.O. Box 770892
Coral Springs, FL 33077

The Named Insured is a Limited Liability Corporation

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

---

**ompany:** Clarendon America Insurance Company

**amed Insured:** Cypress Trace Condominium Association, Inc.

**his endorsement is effective:** 2/23/2O06

EC-AMEND (REV 01-01-2003)                    Page 1 of 1

**Policy Number:**  APX-PROP-00058486

**Endorsement Number:** 3

**Date Issued:** 5/4/2006

Endorsement Form Number:  ETP825-1

# DECLARATIONS AMENDMENT ENDORSEMENT

The COMMERCIAL PROPERTY DECLARATIONS (PDC802), SECTION 1. NAMED INSURED AND MAILING ADDRESS is deleted in its entirety and replaced with the following:

## 1. NAMED INSURED AND MAILING ADDRESS:

Cypress Terrace Condominium Association, Inc.
c/o Andres Perez
2850 Douglas Road - Penthouse
Coral Gables, FL 33134

The Named Insured is a Limited Liability Corporation

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

---

**Company:** Clarendon America Insurance Company

**Named Insured:** Cypress Terrace Condominium Association, Inc.

**This endorsement is effective:** 8/31/2005

EC-AMEND (REV 01-01-2003)                    Page 1 of 1

**Policy Number:**  APX-PROP-00058486

**Endorsement Number:** 2

**Date Issued:** 4/17/2006

Endorsement Form Number:  ETP825-1

# SPECIAL COVERAGE PART

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance as shown in the Declarations.

Insurance applies only to item(s) specifically described in this policy for which a Limit of Insurance is shown in the Declarations and, unless otherwise provided, all provisions and stipulations of this form and policy shall apply separately to each such item.

Words and phrases that appear in quotation marks have special meaning. Refer to PART 4 –DEFINITIONS.

## PART 1
## COVERAGE

The Company shall be liable for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Peril.

### SECTION I–COVERED PROPERTY

The policy shall cover in accordance with the following descriptions of coverage:

### COVERAGE A. BUILDING(S)

Building(s) or structure(s) shall include attached additions and extensions; fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building(s); materials and supplies intended for use in construction, alteration or repair of the building(s) or structure(s); yard fixtures; personal property of the Named Insured used for the maintenance or service of the described building(s), including fire extinguishing apparatus, outdoor furniture, floor coverings and appliances for refrigerating, ventilating, cooking, dish washing and laundering (but not including other personal property in apartments or rooms furnished by the Named Insured as landlord); all while at the described premises.

### COVERAGE B.    PERSONAL PROPERTY OF THE INSURED

Business personal property owned by the Named Insured and usual to the occupancy of the Named Insured, including bullion, manuscripts, fixtures, furniture, fixtures, equipment and supplies, not otherwise covered under this policy, and shall also include the Named Insured's interest in personal property owned by others to the extent of the value of labor, materials and charges furnished, performed or incurred by the Named Insured; all while (1) in or on the described building(s), or (2) in the open

(including within vehicles) on or within 100 feet of the described premises.

This coverage shall also include **"Tenant's Improvements and Betterments"** when not otherwise specifically covered.

### COVERAGE C.  PERSONAL PROPERTY OF OTHERS

This insurance shall cover for the account of the owner(s) (other than the Named Insured) personal property belonging to others in the care, custody or control of the Named Insured, while (1) in or on the described building(s), or (2)  in the open (including within vehicles) on or within 100 feet of the described premises.

Loss shall be adjusted with the Named Insured for the account of the owner(s) of the property, except that the right to adjust any loss with the owner(s) is reserved to the Company and the receipt(s) of the owner(s) in satisfaction thereof shall be in full satisfaction of any claim by the Named Insured for which payment(s) has been made.  This coverage shall not otherwise benefit the Named Insured nor any carrier or other bailee.

### SECTION II–PROPERTY NOT COVERED

This policy does not cover:

1.      Outdoor swimming pools; fences; piers, wharves and docks, beach or diving platforms or appurtenances; retaining walls not constituting a part of a building; walks, roadways and other surfaces, unless a Limit of Insurance is shown in the Declarations.

2.      Excavations, grading or filling; foundations of buildings, machinery, boilers or engines which foundations are below the undersurface of the lowest basement floor, or where there is no basement, below the surface of the ground; pilings, piers, pipes, flues and drains which are underground, pilings which are below the low water mark.

3.    Outdoor signs, whether or not attached to a building or structure.

4.    Growing crops, lawns, outdoor trees, shrubs and plants, except as provided in the EXTENSIONS OF COVERAGE.

5.    Property which is more specifically covered in whole or in part by this or any other contract of insurance, except for the amount of loss which is in excess of the amount due from such more specific insurance, whether collectible or not.

6.    Land (including land on which covered property is located) or water.

7.    Property sold by the Named Insured under conditional sale, trust agreement, installment payment or other deferred payment plan, after delivery to customers.

8.    Aircraft, watercraft, including motors, equipment and accessories (except rowboats and canoes while out of water and on the described premises); and automobiles, trailers, semi-trailers or any self-propelled vehicles or machines, except such property not licensed for use on public thoroughfares and operated principally on the premises of the Named Insured.

This provision does not apply to the following types of property when held for sale or sold but not delivered:

    a.    Watercraft (including motors, equipment and accessories) while not afloat;

    b.    Motorcycles,   motorscooters   and snowmobiles; or

    c.    Trailers designed for use with private passenger vehicles for general utility purposes or carrying boats.

This provision does not apply to the following types of property when manufactured, processed or warehoused by the Named Insured:

    a.    Aircraft;

    b.    Watercraft, including motors, equipment and accessories, while not afloat; or

    c.    Automobiles, trailers, semi-trailers or any self-propelled vehicles or machines.

9.    Personal property while waterborne.

10.   Household and personal effects contained in living quarters occupied by the Named Insured, any officer, director, stockholder or partner of the Named Insured, or relatives of any of the foregoing, except as provided in the EXTENSIONS OF COVERAGE.

11.   Accounts, bills, currency, deeds, evidences of debt, money and securities.

12.   Personal or other property of any condominium unit owner or townhouse owner, including but not limited to bullion, manuscripts, furniture, fixtures, equipment, supplies, floor coverings, wall coverings, and appliances for refrigerating, venting, cooking, dish washing and laundering. This paragraph (12) applies regardless of whether or not the Named Insured or any other insured has agreed in any by-laws, contract or other agreement to be liable for or to insure against direct physical loss of, damage to, or loss of use of such property.

## SECTION   III—PROPERTY   SUBJECT   TO LIMITATIONS

The following property is subject to these additional limitations:

1.    Hot water boilers or other equipment for heating water are not covered against loss caused by any condition or occurrence within such boilers or equipment (other than explosion of accumulated gases or unconsumed fuel within a firebox or combustion chamber).

2.    Glass is not covered against loss for more than $50 per plate, pane, multiple plate, insulating unit, radiant heating panel, jalousie, louver or shutter, nor for more than $250 in any one "occurrence", unless caused by fire, lightning, windstorm, hail, aircraft, vehicles, discharge from fire protection or building service equipment, explosion, riot or civil commotion, and then the Company shall be liable only to the extent that such perils are insured against in this policy.

3.    Fences, pavements, outdoor swimming pools and related equipment, retaining walls, bulkheads, piers, wharves or docks, when covered under this policy, are not covered against loss caused by freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by wind or not.

4.    Metal smokestacks and, when outside of buildings (a) awnings of fabric or slat construction, canopies of fabric or slat construction, including their supports, and (b) radio or television antennas, including their lead-in wiring, masts or towers, are not covered against loss caused by ice, snow, sleet, windstorm or hail.

5.    The interior of buildings is not covered against loss caused by rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless (a) the buildings shall first sustain an actual damage to roof or walls by the direct action of wind or hail, and then the Company shall be liable for loss to the interior of the buildings as may be caused by rain, snow, sleet, ice, sand or dust entering the buildings through openings in the roof or walls made by direct action of wind or hail; or (b) such loss results from fire, lightning, aircraft, vehicles, explosion, riot, civil commotion, vandalism, malicious mischief, weight of ice, snow

or sleet to the extent that such perils are insured against in this policy.

6.     Buildings or structures in process of construction, including materials and supplies therefore, when covered under this policy, are not covered against loss unless caused by fire, lightning, windstorm, hail, aircraft, vehicles, smoke, explosion, riot, civil commotion, vandalism or malicious mischief, and then the Company shall be liable only to the extent that such perils are insured against in this policy.

7.     Property undergoing alterations, repairs, installations or servicing is not covered against loss if such loss is directly attributable to the operations or work being performed thereon, unless a peril not excluded by this policy ensues, and then the Company shall be liable for only loss caused by such ensuing peril.

8.     Except for loss caused by the **"specified perils"**:

   a.     Fur and fur garments are not covered for loss exceeding an aggregate amount of $2,500 in any one **"occurrence"**.

   b.     Jewelry and watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals are not covered for loss exceeding an aggregate amount of $2,500 in any one **"occurrence"**. This limitation shall not apply to jewelry and watches valued at $50 or less per item.

   c.     Patterns, dies, molds, models and forms are not covered for loss exceeding an aggregate amount of $2,500 in any one **"occurrence"**.

   d.     Stamps, tickets (including lottery tickets held for sale), and letters of credit are not covered for loss exceeding an aggregate amount of $250 in any one **"occurrence"**.

9.     Valuable papers and records meaning computer programs and books of account, manuscripts, abstracts, drawings, card index systems and other records including film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing are covered only against loss caused directly by the **"specified perils"**, and then not for loss exceeding an aggregate amount of $2,500 in any one **"occurrence"**.

10.    Animals and pets are not covered, except when held for sale or sold but not delivered, and then only against death or destruction directly resulting from or made necessary by the **"specified perils"**.

11.    Outdoor trees, shrubs and plants are not covered, except: (a) when held for sale or sold but not delivered, and then only against direct loss by the **"specified perils"**, or (b) as provided in the EXTENSIONS OF COVERAGE.

12.    Glass, glassware, statuary, marbles, bric-a-brac, porcelains and other articles of a fragile or brittle nature are covered against loss by breakage only if directly caused by the **"specified perils"**. This limitation shall not apply to bottles or similar containers of property for sale, or sold but not delivered, nor to lenses of photographic or scientific instruments.

13.    Steam boilers, steam pipes, steam turbines and steam engines are not covered against loss caused by bursting, rupture, cracking or explosion originating therein (other than explosion of accumulated gases or unconsumed fuel within a firebox or combustion chamber).

14.    Machines and machinery are not covered against loss caused by rupture, bursting or disintegration or their rotating or moving parts resulting from centrifugal or reciprocating force.

### SECTION IV—VALUATION

The following bases are established for valuation of property:

1.     The value of all stock actually sold but not delivered shall be the price at which it was sold, less all discounts and incurred expenses.

2.     **"Tenant's Improvements and Betterments"**:

   a.     If repaired or replaced at the expense of the Named Insured within a reasonable time after loss, the **"actual cash value"** of the damaged or destroyed improvements and betterments.

   b.     If not repaired or replaced within a reasonable time after loss, that proportion of the original cost at time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement, whether written or oral, in effect at the time of loss bears to the periods from the dates such improvements or betterments were made to the expiration date of the lease.

   c.     If repaired or replaced at the expense of others for use of the Named Insured, there shall be no liability hereunder.

3.     Valuable Papers and Records:

   a.     Books of account, manuscripts, abstracts, drawings, card index systems and other records (except film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing) for an amount not exceeding the cost of blank books, cards, or other blank material plus the cost of labor incurred by the Named Insured for transcribing or copying such records.

   b.     Film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing for an

amount not exceeding the cost of such media in unexposed or blank form.

    c.    Computer programs for an amount not exceeding the cost of labor incurred by the Named Insured for transcribing or copying such programs.

4.    All other property at **"actual cash value"** at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, nor in any event for more than the interest of the Named Insured.

## SECTION V–ADDITIONAL COVERAGE– COLLAPSE

1.    This policy insures against risk of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

    a.    Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism or malicious mischief; breakage of glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this policy;

    b.    Hidden decay;

    c.    Hidden insect or vermin damage;

    d.    Weight of people or personal property;

    e.    Weight of rain which collects on a roof; or

    f.    Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

2.    The Company shall not be liable for loss to the following types of property, if otherwise covered in this policy, under items b., c., d., e., and f. above., unless the loss is a direct result of the collapse of the building:

    outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

3.    Collapse does not include settling, cracking, shrinkage, bulging or expansion.

4.    This ADDITIONAL COVERAGE does not increase the amount(s) of insurance provided in this policy.

## PART 2
## EXTENSIONS OF COVERAGE

Each of the limits of insurance specified for the following EXTENSIONS OF COVERAGE applies as an additional amount of insurance. The Coinsurance Clause shall not apply to loss under the EXTENSIONS OF COVERAGE.

The total amount recoverable under the EXTENSIONS OF COVERAGE in this form and EXTENSIONS OF COVERAGE in any other form made a part of this policy are not cumulative and shall not exceed the largest amount recoverable under any single form made a part of this policy.

### 1.    Debris Removal.

This policy covers expense incurred in the removal of debris of the property covered hereunder which may be occasioned by loss by a peril not otherwise excluded. The total liability under this policy for debris removal expense only shall not exceed $5,000. Debris removal expenses reported to the Company more than 180 days after the earlier of the date of direct loss or the expiration of this policy will not be reimbursable.

Under no circumstance will this section apply to the removal or cleansing of contaminated soil, water, or the purification or cleansing of polluted water or any aquifer.

### 2.    Outdoor Trees, Shrubs and Plants.

The Named Insured may apply up to $1,000 to cover outdoor trees, shrubs and plants at the described premises against direct loss in any one **"occurrence"** by the perils of fire, lightning, explosion, riot, civil commotion or aircraft, but only to the extent such perils are insured against herein. The Company shall not be liable for more than $250 on any one tree, shrub or plant, including expense incurred for removing debris thereof.

### 3.    Newly Acquired Property.

The Named Insured may apply up to 25% of the amount of insurance specified for BUILDING(S), but not exceeding $100,000, to cover direct loss in any one **"occurrence"** by a peril not otherwise excluded to the following described property:

    a.    New buildings and new structures being constructed on the described premises and intended for similar occupancy when not otherwise covered by insurance. This coverage shall cease 30 days from the date construction begins or on the date the values of new construction are reported to the Company, or on the expiration date of the policy, whichever occurs first.

    b.    Buildings acquired by the Named Insured at any locations, elsewhere than at the described premises, within or between the fifty states of the United States of America, the

District of Columbia and Puerto Rico and used for similar occupancies or warehouse purposes. This coverage shall cease 30 days from the date of such acquisition or on the date values of the buildings are reported to the Company, or on the expiration date of the policy, whichever occurs first.

Additional premium shall be due and payable for values so reported from the date construction begins or the property is acquired.

### 4. Off-Premises.

a. The Named Insured may apply up to 2% of the amount of insurance specified for BUILDING(S), but not exceeding $5,000, at a described location to cover direct loss in any one **"occurrence"** by a peril not otherwise excluded to property covered under BUILDING(S) while removed from the described premises for purposes of cleaning, repairing, reconstruction or restoration. This EXTENSION OF COVERAGE shall not apply to property in transit, nor property on any premises owned, leased, operated or controlled by the Named Insured.

b. The Named Insured may apply up to 2% but not exceeding $5,000 nor less than $1,000 of the amount of insurance of COVERAGE B. PERSONAL PROPERTY OF THE INSURED at a described location, to cover direct loss by a peril not otherwise excluded to such property, other than merchandise or stock (raw, in process, or finished), owned by the Named Insured. This EXTENSION OF COVERAGE shall not apply: to loss by theft; to property in transit; to property on any premises owned, leased, operated or controlled by the Named Insured; or except as excess over the amount due from any other insurance covering the property, whether collectible or not.

### 5. Replacement Cost.

In the event of loss to a building or structure covered under this policy, when the full cost of repair or replacement is less than $1,000, the coverage of this policy is extended to cover the full cost of repair or replacement (without deduction for depreciation). Coverage shall be applicable only to a building or structure covered hereunder, but excluding outdoor furniture, outdoor equipment, floor coverings, awnings and appliances for refrigerating, ventilating, cooking, dish washing and laundering, all whether or not permanently attached to the building or structure.

The Company shall not be liable under this EXTENSION OF COVERAGE unless the whole amount of insurance applicable to the building or structure for which claim is made is equal to or in excess of the amount produced by multiplying the **"actual cash value"** of such property at the time of the loss by the coinsurance percentage applicable (specified in the Declarations, or by endorsement).

### 6. Property at Newly Acquired Locations.

The Named Insured may apply up to 10% of the amount of insurance specified for PERSONAL PROPERTY OF THE INSURED but not exceeding $10,000 to cover direct loss in any one **"occurrence"** by a peril not otherwise excluded to such property at any location (except fairs and exhibitions) acquired by the Named Insured for similar occupancies or warehousing purposes, elsewhere than at the described premises within or between the fifty states of the United States of America, the District of Columbia and Puerto Rico. This coverage shall cease 30 days from the date of such acquisition or on the date values at such locations are reported to the Company, or on the expiration date of the policy, whichever occurs first. Additional premium shall be due and payable for values so reported from the date the property is acquired.

### 7. Personal Effects.

The Named Insured may apply up to $500 to cover direct loss in any one **"occurrence"** by the perils not otherwise excluded to personal effects while located on the described premises belonging to the Named Insured, officers, partners or employees thereof, and limited to $100 on personal effects owned by any one individual. This EXTENSION OF COVERAGE does not apply if the loss is covered by any other insurance, whether collectible or not, or which would have been covered by such other insurance in the absence of the policy. At the option of the Company, loss under this EXTENSION OF COVERAGE may be adjusted with and payable to the Named Insured.

### 8. Valuable Papers and Records.

The Named Insured may apply up to $500 to cover direct loss in any one **"occurrence"** by a peril not otherwise excluded to valuable papers and records consisting of computer programs and books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing and other records, all the property of the Named Insured at the described premises. The EXTENSION OF COVERAGE covers only the cost of research and other expense necessarily incurred by the Named Insured to reproduce, replace or restore such valuable papers and records. The total amount payable in any one **"occurrence"** under this EXTENSION OF COVERAGE shall not exceed the limit specified above, regardless of the number of described locations.

### 9. "Extra Expense".

The Named Insured may apply up to $1,000 to cover the necessary **"extra expense"** incurred by the Named Insured in order to continue as nearly as practicable the normal operations of the Named Insured's business immediately following damage by a peril not otherwise excluded under this form to the buildings or personal property situated at the described premises.

The Company shall not be liable under this EXTENSION OF COVERAGE for:

a.    Loss of income;

b.    The cost of repairing or replacing any of the described property, or the cost of research or other expense necessary to replace or restore computer programs and books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing, and other records that have been damaged by a peril not otherwise excluded, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing the total amount of "extra expense". In no event shall such excess exceed the amount by which the total "extra expense" otherwise payable under this EXTENSION OF COVERAGE is reduced; or

c.    Any other consequential or remote loss.

## 10.    Damage to Buildings from Theft, Burglary or Robbery.

This policy includes loss (except by fire or explosion) to that part of the building occupied by the Named Insured and containing property covered, and to equipment therein pertaining to the service of the building but not building property or equipment removed from premises, directly resulting from theft, burglary or robbery (including attempt thereat), provided the Named Insured is the owner of such building or equipment or is liable for such damage, but in no event shall this coverage apply to glass (other than glass building blocks) or to any lettering or ornamentation thereon.

## 11.    Transportation.

The Named Insured may apply up to $1,000 to cover insured personal property (other than property in the care, custody or control of salesmen) during transportation by motor vehicles owned, leased or operated by the Named Insured for loss in any one "**occurrence**" caused by:

a.    Fire, lightning, windstorm, hail, explosion, smoke, riot, riot attending a strike, civil commotion, vandalism or malicious mischief;

b.    Collision, overturning or upset of the vehicle, meaning thereby the violent and accidental contact of the vehicle conveying the property described herein with any other vehicle or object excluding any loss or damage done by coming in contact with any portion of the roadbed or by means other than as expressly indicated; or

c.    Theft of an entire shipping bale, case or package from a vehicle while such property is contained in a fully enclosed and securely locked body or compartment and

theft results from forcible entry, evidenced by visible marks upon such body or compartment.

The EXTENSION OF COVERAGE covers the above described property while in transit within or between the fifty states of the United States of America, the District of Columbia and Puerto Rico.

## 12.    Non-Owned Personal Property.

The Named Insured may apply at each location up to 2% of the amount of insurance specified for COVERAGE B. PERSONAL PROPERTY OF THE INSURED at such location, but not exceeding $2,000 to cover for the account of the owners thereof (other than the Named Insured) direct loss by a peril not otherwise excluded to personal property, similar to that covered by this policy, belonging to others while in the care, custody or control of the Named Insured and while (a) in or on the described building(s), or (b) in the open (including within vehicles) on or within 100 feet of the described premises.

Loss shall be adjusted with the Named Insured for the account of the owners of the property, except that the right to adjust any loss with the owners is reserved to the Company and the receipts of the owners in satisfaction thereof shall be in full satisfaction of any claim by the Named Insured for which payments have been made. As respects personal property belonging to others, this provision shall replace any loss payable provision of this policy.

## PART 3
## COVERED PERILS, EXCLUSIONS, DEDUCTIBLE CLAUSE, OTHER PROVISIONS

### SECTION I--COVERED PERILS

This policy insures against risks of direct physical loss, unless the loss is excluded in SECTION II--EXCLUSIONS below subject to the provisions and stipulations herein and in the policy of which this form is made a part.

### SECTION II--EXCLUSIONS

The Company will not pay for loss, damage, cost or expense of any nature caused directly or indirectly by, resulting from, arising out of, contributed to, aggravated by, or in any way connected with any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1.    The enforcement of any ordinance or law regulating the use, repair, construction, or demolition of buildings, structures or property, including debris removal expenses.

2.    The interruption of power or other utility service furnished to the described premises if the interruption takes place away from the described premises. If a peril not otherwise excluded ensues on the described premises, the Company will pay only for loss caused by the ensuing peril.

3.    a.    Earth movement, including but not limited to earthquake, landslide, mudslide, mudflow, sinkhole, mine subsidence, earth sinking, earth rising or shifting;

b.    Flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

c.    Water, sewage or any other liquid substance which backs up through, or overflows from, sewers, drains or sumps;

d.    Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors; fire or explosion as insured against ensues, and then the Company shall be liable for only loss caused by the ensuing fire or explosion; or

e.    **"Volcanic eruption"** unless direct loss by fire or breakage of building glass or safety glazing materials ensues. In this event, the Company shall be liable for only the direct loss to the property insured caused by the ensuing fire and if an insured peril, the ensuing breakage of building glass or safety glazing material.

4.    a.    Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; (b) by military, naval or air forces; or (c) by an agent of such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power, authority or forces.

b.    Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence; seizure or destruction under quarantine or custom's regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

5.    Nuclear reaction or radiation or radioactive contamination, however caused, but if nuclear reaction or radiation, or radioactive contamination, results in fire, the company will pay for the loss or damage caused by that fire.

6.    Unexplained or mysterious disappearance of property or shortage of property disclosed on taking inventory; or caused by any willful or dishonest act or omission of the Named Insured or any associate, employee or agent of any insured.

7.    Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment or appliances (except fire protection systems) caused by or resulting from freezing, unless the Named Insured shall have exercised due diligence with respect to maintaining heat in the buildings or unless such equipment and appliances had been drained and the water supply shut off.

8.    Explosion of steam boilers, steam pipes, steam turbines or steam engines (except direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox, or combustion chamber, of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom) if owned by, leased by or operated under the control of the Named Insured or for any ensuing loss except by fire or explosion not otherwise excluded, and then the Company shall be liable for only such ensuing loss;

9.    a.    Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in this section to produce the loss.

b.    Acts or decisions, including the failure to act or decide of any person, group or organization or governmental body.

c.    Faulty, inadequate or defective:

(1)    Planning, zoning, development, surveying, siting;

(2)    Design, specifications, workmanship, repair, construction, renovation, remodeling or grading compaction;

(3)    Materials used in repair, construction, renovation or remodeling; or

(4)    Maintenance;

of part or all of any property on or off the described premises.

However, any ensuing loss not excluded or excepted in this policy is covered.

10.    Actual, alleged or threatened release, discharge, escape or dispersal of **"contaminants or pollutants"**, caused by, contributed to or aggravated by any physical damage insured by this policy.

11.     Any electrical injury or disturbance to electrical appliances, devices, fixtures or wiring caused by electrical currents artificially generated unless fire as insured against ensues, and then the Company shall be liable for only loss caused by the ensuing fire.

12.     a.      Wear and tear; marring or scratching; deterioration; rust or corrosion; mold; wet or dry rot; inherent vice or latent defect; smog; smoke, vapor or gas from agricultural or industrial operations; mechanical breakdown, including rupture or bursting caused by centrifugal force; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings; animals, birds, vermin, termites or other insects; dampness or dryness of atmosphere; or changes in extremes of temperature. But if loss by fire, smoke (other than smoke from agricultural smudging or industrial operations), explosion, collapse of a building, building glass breakage or water not otherwise excluded ensues, then this policy shall cover only such ensuing loss.  If loss by water not otherwise excluded ensues, this policy shall also cover the cost of tearing out and replacing any part of the building covered required to effect repairs to the plumbing, heating or air conditioning system or domestic appliance but excluding loss to the system or appliance from which the water escapes.

        b.      Vandalism, malicious mischief, theft or attempted theft, if the building had been **"vacant"** or **"unoccupied"** beyond a period of 30 consecutive days immediately preceding the loss, unless loss by a peril not otherwise excluded in this policy ensues, and then the Company shall be liable for only such ensuing loss. This exclusion does not apply to such **"unoccupancy"** as is usual or incidental to the described occupancy.

        c.      Theft (including but not limited to burglary and robbery) of any building materials and supplies which at the time of loss are not installed or attached to and made a part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place of a riot or civil commotion), unless loss by a peril not otherwise excluded in this policy ensues from theft or attempted theft, and then the Company shall be liable for only such ensuing loss.

        d.      Continuous or repeated seepage or leakage of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance which occurs over a period of weeks, months or years.

13.     Actual work upon, installation or testing of property covered, failure, breakdown or derangement of machines or machinery unless loss by fire or explosion not otherwise excluded ensues and then the Company shall be liable for only such ensuing loss.

14.     Delay, loss of market, interruption of business, or consequential loss of any nature.

15.     Voluntary parting with title or possession of any property by the Named Insured or others to whom the property may be entrusted if induced to do so by any fraudulent scheme, trick, device or false pretense.

16.     Any fraudulent, dishonest or criminal act done by or at the instigation of any insured, partner or joint venture participant in or of any insured, an officer, director or trustee of any insured; pilferage, appropriation or concealment of any property covered due to any fraudulent, dishonest or criminal act of any employee while working or otherwise, or agent of any insured, or any person to whom the property covered may be entrusted.

17.     Rain, snow, ice, or sleet to property in the open.

18.     Collapse, except as provided above in the COLLAPSE ADDITIONAL COVERAGE.  If a peril not otherwise excluded ensues on the described premises, the Company will pay only for loss caused by the ensuing peril.

19.     Any **"act of terrorism"** or any action taken in countering, controlling, preventing, suppressing, minimizing, terminating or in any way relating to an **"act of terrorism"**.

20.     a.      The presence of, suspected presence of, or exposure to, any **"fungus(i)"** or **"spore(s)"**;

        b.      Any substance, vapor or gas produced by or arising out of any **"fungus(i)"** or **"spore(s)"**;

        c.      Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium or host for any **"fungus(i)"** or **"spore(s)"**; or

        d.      Any testing for, monitoring of, cleaning of, removal of, containment of, treatment of, detoxification of, neutralization of, remediation of, disposal of, or any other response to or assessment of any of the items in (a), (b) or (c) above.

This exclusion applies regardless of any other causes or events (including, but not limited to, causes or events resulting from an otherwise Covered Peril), material, product and/or building component that contributed concurrently or in any sequence to any loss, damage, cost or expense.

## SECTION III—DEDUCTIBLE CLAUSE

The Company will not pay for loss or damage in any one "occurrence" until the amount of loss or damage exceeds the Deductible shown in the Property Deductible Endorsement. The Company will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by the Coinsurance Clause.

## SECTION IV—OTHER PROVISIONS

## 1.    Coinsurance Clause.

The Company shall not be liable for a greater proportion of any loss to the property covered than the limits of insurance specified in the Declarations, or by endorsement, for such property bears to the amount produced by multiplying the **"actual cash value"** of such property at the time of loss by the coinsurance percentage applicable (specified in the Declarations, or by endorsement).

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the total amount of insurance applicable to the property involved at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required, providing that nothing herein shall be construed to waive the application of the first paragraph of this clause.

The value of property covered under EXTENSIONS OF COVERAGE, and the cost of the removal of debris shall not be considered in the determination of **"actual cash value"** when applying the Coinsurance Clause.

## 2.    Premium.

The first Named Insured shown in the Declarations is responsible for the payment of all premiums. Premiums are due and payable when billed by the Company. If full payment is not received within a 90 day period from when due, interest will accrue on any premium balance from the original due date. The interest rate will be 1.5% per month or any portion thereof and will continue accruing until the unpaid premium and accrued interest are fully received by the Company. If the interest exceeds any applicable state law, then the interest rate shall be the highest rate permitted by law. When coverage is in force for less than 90 days, a 25% minimum earned premium will apply.

The insured and the Company acknowledge that this insurance policy is a contract. The insured agrees that any funds due him specifically under this policy may be offset and applied to funds due from him to the Company or its affiliates under this insurance policy or any other insurance policies, regardless of whether such amounts are related to premiums or not.

## 3.    Time of Inception.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

## 4.    Duties of the Named Insured After a Loss.

In case of loss the Named Insured shall:

a.    Give immediate written notice of such loss to the Company.

b.    Protect the building and personal property from further damage, make reasonable temporary repairs required to protect the property, and keep an accurate record of repair expenditures.

c.    Prepare an inventory of damaged personal property showing in detail, quantity, description, **"actual cash value"** and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory.

d.    Exhibit the remains of the damaged property as often as may be reasonably required by the Company and submit to examination under oath.

e.    Submit to the Company within 60 days after requested a signed, sworn statement of loss that sets forth to the best of the Named Insured's knowledge and belief:

(1)    The time and cause of loss;

(2)    Interest of the insured and all others in the property involved and encumbrances on the property;

(3)    Other policies of insurance that may cover the loss;

(4)    Changes in title or occupancy of the property during the term of the policy;

(5)    Specifications of any damaged building and detailed estimates for repair of the damage;

(6)    An inventory of damaged personal property described in c. above.

f.    Give notice of such loss to the proper police authority if loss may be due to a violation of law.

In the event of loss, the Company may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

## 5.    Privilege to Adjust with Owner.

a.    Except as provided in b. below, or unless another payee is specifically named in the policy, loss, if any, shall be adjusted with and payable to the Named Insured.

b.    In the event claim is made for damage to property of others held by the insured, the right to adjust such

loss or damage with the owner or owners of the property is reserved to the Company and the receipt of payment by such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the insured for which such payment has been made.

If legal proceedings are taken to enforce a claim against the insured as respects any such loss or damage, the Company reserves the right at its option, without expense to the insured, to conduct and control the defense on behalf of and in the name of the insured. No action of the Company in such regard shall increase the liability of the Company under this policy, nor increase the limits of insurance specified in the policy.

6.    **Statements, Warranties and Representations.**

By accepting this policy, you agree that:

a.    The application(s) for insurance you completed will be considered a part of this policy including all statements, warranties and representations;

b.    The statements, warranties and representations are accurate and complete;

c.    We have issued this policy in reliance upon your statements, warranties and representations; and

d.    Except as otherwise provided by law, this policy is void in any case of fraud or if any insured (or any agent or person acting on behalf of or for the benefit of any insured) conceals or misrepresents, either intentionally or unintentionally, any material fact or circumstance relating to this insurance.

7.    **Transfer Of Your Rights And Duties Under This Policy.**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

8.    **Inspections and Surveys.**

We have the right but are not obligated to:

a.    Make inspections and surveys at any time;

b.    Give you reports on the conditions we find; and

c.    Recommend changes to such conditions.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

And we do not warrant that conditions:

a.    Are safe or healthful; or

b.    Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

9.    **Examination of Your Books and Records.**

We may examine and audit your books and records as they relate to this policy at any time during the **"policy period"** and up to three years afterwards.

10.    **Other Insurance.**

If other valid and collectible insurance is available to any insured for a loss we cover under the policy, our obligations are limited as follows:

a.    **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent, self-insurance or on any other basis.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)    The total of all deductible and self-insured amounts under any other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

b.    **Method of Sharing**

If a court of competent jurisdiction finds that this insurance is not excess over any of the other insurance, then we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limits of Insurance to the total applicable Limits of Insurance of all insurers.

## 11.    Insurance Under More than One Coverage, Part or Endorsement.

In the event that more than one coverage, part or endorsement of this policy insures the same loss, damage or claim, the Company shall not be liable for more than the actual loss or damage sustained by the insured.

## 12.    Waiver or Change of Provisions.

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.

This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## 13.    Divisible Contract Clause.

If this policy covers two or more buildings, the breach of any condition of the policy in any one or more of the buildings covered or containing the property covered shall not prejudice the right to recover for loss occurring in any building covered or containing the property covered, where at the time of loss a breach of condition does not exist.

## 14.    Limits of Insurance

    a.    The Limits of Insurance shown in the Declarations is the total limit of the Company's liability applicable to each "occurrence". Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

    b.    The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the event of loss hereunder, liability of the Company, subject to the terms of paragraph a. above, shall be limited to the least of the following:

        (1)    The actual adjusted amount of loss, less applicable deductible(s);

        (2)    The total stated value for the property involved, as shown on the latest Statement of Values attached to the policy less applicable deductible(s); or

        (3)    The Limits of Insurance shown in the Declarations or endorsed onto this policy.

## 15.    Loss Clause.

Any loss hereunder shall not reduce the amount of this policy.

## 16.    Permits and Use.

Except as otherwise provided, permission is granted:

    a.    To make alterations and repairs;

    b.    For such "unoccupancy" as is usual or incidental to the described occupancy; but "vacancy" is limited to the 60-day period permitted by the policy conditions.

    c.    In the event of loss hereunder, to make reasonable repairs, temporary or permanent, provided such repairs are confined solely to the protection of the property from further damage, and provided further that the Named Insured shall keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any peril not otherwise excluded shall be included in determining the amount of loss hereunder. Nothing herein contained is intended to modify the policy requirements applicable in case loss occurs, and in particular the requirement that, in case loss occurs, the Named Insured shall protect the property from further damage.

## 17.    Protective Safeguards.

It is a condition of this insurance that the Named Insured shall maintain so far as is within his control such protective safeguards as are set forth by endorsement hereto.

Failure to maintain such protective safeguards shall void this insurance for the time of such discontinuance.

## 18.    Transfer Of Rights Of Recovery Against Others To Us.

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after the "occurrence" to impair them. The insured must bring suit or transfer those rights to us and help us enforce them, including, but not limited to, taking such actions against any other insurer which has available insurance for the "occurrence".

## 19.    Policy Period, Territory.

This policy applies only to loss to property during the "policy period" while such property is within or between the fifty states of the United States of America, the District of Columbia and Puerto Rico.

## 20.    Removal.

This policy covers loss by removal of the property covered hereunder from premises endangered by the perils insured against in this policy. The amount of insurance applies pro rata for 5 days at each proper place to which such property shall necessarily be removed for preservation.

## 21.    Appraisal.

If the Named Insured and the Company fail to agree on the amount of the loss, the Company can demand that the amount of loss be set by appraisal.  If the Company makes a written demand for appraisal, each party shall select a competent independent appraiser. Each party shall notify the other of the selected appraiser's identity within 20 days of the receipt of the written demand.

The two appraisers shall select a competent, impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, the Named Insured or the Company may petition a judge of a Court of Record in the state where the insured premises is located to select an umpire.

The appraisers shall then set the amount of the loss.  If the appraisers submit a written report of an agreement to the Company, the amount agreed upon shall be the amount of the loss.  If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of loss.

Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and compensation of the umpire shall be paid equally by the Named Insured and the Company.

## 22.    Company Options.

If the Company gives notice within 30 days after it has received a signed, sworn statement of loss, it shall have the option to take all or any part of the property damaged at an agreed value, or to repair, rebuild or replace it with equivalent property.

## 23.    Abandonment of Property.

The Company need not accept any property abandoned by an insured.

## 24.    Payment of Loss.

The Company will pay all adjusted claims within 30 days after presentation and acceptance of the proof of loss.

## 25.    "Vacancy", "Unoccupancy" and Increase of Hazard.

a.        The Company shall not be liable for loss occurring while a described building, whether intended for occupancy by owner or tenant is "vacant" beyond a period of 60 consecutive days.

b.        Permission is granted for "unoccupancy".

c.        Unless otherwise provided in writing added hereto, the Company shall not be liable for loss occurring while the hazard is increased by any means within the control or knowledge of the insured.

## 26.    Recoveries.

In the event the Company has made a payment for loss under the policy and a subsequent recovery is made of the lost or damaged property, the insured shall be entitled to all recoveries in excess of the amount paid by the Company, less only the actual cost of effecting such recoveries.

## 27.    No Control.

This insurance shall not be prejudiced by:

a.        Any act or neglect of any person (other than the Named Insured), when such act or neglect is not within the control of the Named Insured.; or

b.        any act or neglect of the owner of any building if the insured is not the owner thereof, or by any act or neglect of any occupant (other than the insured) of any building when such act or neglect of the owner or occupant is not within the control of the insured; or

c.        the failure of the insured to comply with any statement, representation or warranty or condition contained in any endorsement attached to this policy with regard to any portion of the premises over which the insured has no control.

## 28.    No Benefit To Bailee.

This insurance shall not inure directly or indirectly to the benefit of any carrier or other bailee.

## 29.    When We Do Not Renew.

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## 30.    Cancellation.

a.        The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b.    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1)    10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2)    30 days before the effective date of cancellation if we cancel for any other reason.

c.    We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

d.    Notice of cancellation will state the effective date of cancellation. The **"policy period"** will end on that date unless the policy has been cancelled flat for the non-payment of premium, in which case the policy, at the option of the Company, may be cancelled retroactive to the inception of the policy.

e.    If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f.    If notice is mailed, proof of mailing will be sufficient proof of notice.

### 31.    Suit.

No suit shall be brought on this policy unless the insured has complied with all the policy provisions and has commenced the suit within one year after the loss occurs.

### 32.    Mortgage Clause.

Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named in the Declarations, or by endorsement, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the herein described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided, also, that the mortgagee (or trustee) shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the

premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

The Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

### 33.    Choice of Law.

This policy, and all disputes relating to the parties' obligations under this policy, shall be interpreted, construed, governed by and enforced in accordance with the laws of the State of Illinois.

### 34.    Forum Selection.

At the Company's option, actions arising directly or indirectly from this policy shall be litigated in courts located within Cook County, Illinois. Each insured under this policy (including but not limited to the Named Insured) consents to the jurisdiction of such courts and agrees not to contest such choice of forum.

### 35.    Severability.

Wherever possible, each provision of this policy shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this policy shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of any prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this policy.

### 36.    Waiver.

The Company's failure at any time to require strict performance by any insured of any duties under this policy shall not waive, affect or diminish any right the Company has thereafter to demand strict performance thereunder.

### *PART 4*
### *DEFINITIONS*

1.    **"Act of terrorism"** means any act by any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), which is committed or appears to be committed for political, religious, ideological or similar purposes, or which is intended or appears to be intended to (a) influence the conduct or policy of any government or sovereign power, de facto or de jure, (b) put the public or any section of the public in fear, or (c) disrupt any segment of any economic, political or social system. An **"act of terrorism"** includes, but is not limited to, the use or threat of use of force, violence, intimidation, coercion, or any other instrumentality of any kind which is harmful or damaging to property or human life or health.

2.    **"Actual cash value"** (ACV) means the cost of repair or replacement less depreciation.

3.    **"Contaminants or pollutants"** means any material which after its release can or may cause or threaten damage to natural resources, human health or human welfare or can or may cause or threaten environmental damage, deterioration, loss of value, marketability or loss of use to property insured hereunder including, but not limited to, bacteria, fungi, virus or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substance Control Act, or as determined by the U. S. Environmental Protection Agency.

4.    **"Extra Expense"** means the excess of the total cost incurred during the **"period of restoration"** chargeable to the operations of the Named Insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred. Any salvage value of property obtained for temporary use during the **"period of restoration"**, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

5.    **"Fungus(i)"** means any bacteria or any saprophytic or parasitic spore producing organisms, including but not limited to, molds, mildews, wet or dry rot, smuts, rust, yeast or mushrooms.

6.    **"Occurrence"** means any one loss, disaster, casualty or series of losses, disasters, or casualties arising out of one event. When the term applies to loss or losses from the perils of tornado, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion or vandalism or malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to the covered property.

7.    **"Period of restoration"** means that period of time

commencing with the date of damage and not limited by the date of expiration of this policy, as would be required with the exercise of due diligence and dispatch to repair, rebuild, or replace such part of said buildings or personal property as have been damaged. The term **"Period of restoration"** shall not include any increased period of time required due to the enforcement of any law regulating the prevention, control, repair clean-up or restoration of environmental damage.

8.    **"Policy period"** means the period from the effective date of this policy shown in the Declarations to the earlier of the expiration date shown in the Declarations or the effective date of cancellation of this policy.

9.    **"Specified perils"** means direct loss by fire, lightning, aircraft, explosion, riot, civil commotion, smoke, vehicles, windstorm or hail to property contained in any building, vandalism, malicious mischief or leakage or accidental discharge from automatic fire protective systems.

10.    **"Spore(s)"** means any reproductive body produced by or arising out of any **"fungus(i)**.

11.    **"Tenants Improvements and Betterments"** means the Named Insured's use interest in fixtures, alterations, installations or additions constituting a part of the buildings(s) occupied but not owned by the Named Insured and made or acquired at the expense of the Named Insured exclusive of rent paid by the Named Insured, but which are not legally subject to removal by the Named Insured.

12.    **"Unoccupied"** or **"unoccupancy"** means containing contents pertaining to occupancy of the building while operations or other customary activities are suspended.

13.    **"Vacant"** or **"vacancy"** means containing no contents pertaining to operations or activities customary to occupancy of the building. A building shall be deemed vacant if 70% or more of its square footage is not rented or used to conduct customary operations. A building in the process of construction shall not be deemed **"vacant"**.

14.    **"Volcanic eruption"** means the eruption, explosion or effusion of a volcano.

# "REPLACEMENT COST" ENDORSEMENT

**This endorsement applies only to item(s) of insurance specified in the Declarations, or by endorsement, as being subject to this "Replacement Cost" (RC) Valuation Basis.**

1.   "Replacement cost" replaces the term **"actual cash value"** wherever it appears in this policy, subject to the provisions of this endorsement and of the policy to which this endorsement is attached.

2.   This endorsement shall not apply to stock (raw, in process or finished) or merchandise, property of others, household furniture or residential contents; or to manuscripts; or to paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glassware and bric-a-brac, or other articles of art, rarity or antiquity.

3.   The Company shall not be liable under this endorsement for any loss unless and until the damaged or destroyed property is actually repaired or replaced by the insured with due diligence and dispatch.

4.   **Coinsurance Clause.**

The Company shall not be liable for a greater proportion of any loss to the property covered than the limits of insurance specified in the Declarations, or by endorsement, for such property bears to the amount produced by multiplying the **"replacement cost"** of such property at the time of the loss by the coinsurance percentage applicable (specified in the Declarations, or by endorsement), nor for more than the proportion which this policy bears to the total insurance thereon.

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the total amount of insurance applicable to the property involved at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required, providing, that nothing herein shall be construed to waive application of the first paragraph of this clause.

If the coverage under this policy is divided into two or more items, the foregoing shall apply separately to each item to which this endorsement applies.

5.   The insured may elect to make claim under this policy in accordance with its provisions, disregarding this endorsement. The insured may make further claim for any additional liability brought about by this endorsement in accordance with its provisions, provided the Company is notified in writing within 90 days after loss of the insured's intent to make such further claim.

6.   The Company's liability for loss on a **"replacement cost"** basis shall not exceed the smallest of the following amounts:

a.   The Limits of Insurance shown in the Declarations applicable to the damaged or destroyed property;

b.   The **"replacement cost"** of the property or any part thereof identical with such property on the same premises and intended for the same occupancy and use; or

c.   The amount actually and necessarily expended in repairing or replacing said property or any part thereof.

---

**Company:** First Mercury Insurance Company

**Named Insured:** SAMPLE DBA SAMPLE

**This endorsement is effective:** 4/19/2007

**Policy Number:** FMAP001412

# "REPLACEMENT COST" ENDORSEMENT

7.   **Apportionment Clause.**

The Company shall not be liable under this policy including this endorsement for a greater proportion of any loss than the amount of this policy applying to the property to which this endorsement applies bears to the total amount of insurance on such property against the peril involved, whether or not such other insurance includes the extension of coverage provided under this endorsement, and whether such other insurance is collectible or not.

8.   If the coverage on property under this policy is divided into two or more items, all of the foregoing shall apply separately to each item to which this endorsement applies.

9.   **Definitions.**

**"Replacement Cost" (RC)** means the cost of repair or replacement without deduction for depreciation.


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

---

**Company:** First Mercury Insurance Company

**Named Insured:** SAMPLE DBA SAMPLE

**This endorsement is effective:** 4/19/2007

**Policy Number:**     FMAP001412

# Estimate

Claim #          07-10057
Coverage BLDG

---

**Five Star Claims Adjusting**

Adjuster
Five Star Claims Adjusting

August 6, 2007
Coverage - Building

Insured      Cypress Property Investments,, Cypress Trace Condo Assn,inc.
Address      3002 Coral Ridge Drive A-F, Coral Springs, FL 33065
Phone Number
             Policy #    APX-PROP-00058486
             Ins Claim #

Date of Loss    10/24/2005

Ins Company   Clarendon America Insurance

---

## Roof Build A

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Roof Tile, Concrete | 114.55 SQ @ $1,110.00 * | $127,150.50 | $0.00 | $127,150.50 | | |
| Remove Trim, Exterior, 2"x10" | 80.96 LF @ $0.47 | $38.05 | $0.00 | $38.05 | | |
| PERCENTAGE ALLOWANCE FOR FASCIA REPLACEMENT | | | | | | |
| Replace Trim, Exterior, 2"x10" | 80.96 LF @ $6.39 | $517.33 | $0.00 | $517.33 | | |
| Remove Sheathing, Roof, Plywood, 5/8" | 400 SF @ $0.25 | $100.00 | $0.00 | $100.00 | | |
| PERCENTAGE ALLOWANCE FOR WOOD REPLACEMENT | | | | | | |
| Replace Sheathing, Roof, Plywood, 5/8" | 400 SF @ $1.15 | $460.00 | $0.00 | $460.00 | | |
| Special Dumpster, 40 Yard | 3 EA @ $549.03 | $1,647.09 | $0.00 | $1,647.09 | | |
| | | $129,912.97 | $0.00 | $129,912.97 | | |

## Roof Build B

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Roof Tile, Concrete | 85.14 SQ @ $1,110.00 * | $94,505.40 | $0.00 | $94,505.40 | | |
| Remove Trim, Exterior, 2"x10" | 80.96 LF @ $0.47 | $38.05 | $0.00 | $38.05 | | |
| PERCENTAGE ALLOWANCE FOR FASCIA REPLACEMENT | | | | | | |
| Replace Trim, Exterior, 2"x10" | 80.96 LF @ $6.39 | $517.33 | $0.00 | $517.33 | | |
| Remove Sheathing, Roof, Plywood, 5/8" | 400 SF @ $0.25 | $100.00 | $0.00 | $100.00 | | |
| PERCENTAGE ALLOWANCE FOR WOOD REPLACEMENT | | | | | | |
| Replace Sheathing, Roof, Plywood, 5/8" | 400 SF @ $1.15 | $460.00 | $0.00 | $460.00 | | |
| Special Dumpster, 40 Yard | 2 EA @ $549.03 | $1,098.06 | $0.00 | $1,098.06 | | |
| | | $96,718.84 | $0.00 | $96,718.84 | | |

## Roof Build C

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Roof Tile, Concrete | 55.73 SQ @ $1,110.00 * | $61,860.30 | $0.00 | $61,860.30 | | |

Estimate (MS/B 0410)                          - 1 -                          Aug 6, 2007
Claim # 07-10057



EXHIBIT
B

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Trim, Exterior, 2"x10" | 80.96 LF @ $0.47 | $38.05 | $0.00 | $38.05 | | |
| PERCENTAGE ALLOWANCE FOR FASCIA REPLACEMENT | | | | | | |
| Replace Trim, Exterior, 2"x10" | 80.96 LF @ $6.39 | $517.33 | $0.00 | $517.33 | | |
| Remove Sheathing, Roof, Plywood, 5/8" | 400 SF @ $0.25 | $100.00 | $0.00 | $100.00 | | |
| PERCENTAGE ALLOWANCE FOR WOOD REPLACEMENT | | | | | | |
| Replace Sheathing, Roof, Plywood, 5/8" | 400 SF @ $1.15 | $460.00 | $0.00 | $460.00 | | |
| Special Dumpster, 40 Yard | 2 EA @ $549.03 | $1,098.06 | $0.00 | $1,098.06 | | |
| | | $64,073.74 | $0.00 | $64,073.74 | | |

## Roof Build D

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Roof Tile, Concrete | 55.73 SQ @ $1,110.00 * | $61,860.30 | $0.00 | $61,860.30 | | |
| Remove Trim, Exterior, 2"x10" | 80.96 LF @ $0.47 | $38.05 | $0.00 | $38.05 | | |
| PERCENTAGE ALLOWANCE FOR FASCIA REPLACEMENT | | | | | | |
| Replace Trim, Exterior, 2"x10" | 80.96 LF @ $6.39 | $517.33 | $0.00 | $517.33 | | |
| Remove Sheathing, Roof, Plywood, 5/8" | 400 SF @ $0.25 | $100.00 | $0.00 | $100.00 | | |
| PERCENTAGE ALLOWANCE FOR WOOD REPLACEMENT | | | | | | |
| Replace Sheathing, Roof, Plywood, 5/8" | 400 SF @ $1.15 | $460.00 | $0.00 | $460.00 | | |
| Special Dumpster, 40 Yard | 2 EA @ $549.03 | $1,098.06 | $0.00 | $1,098.06 | | |
| | | $64,073.74 | $0.00 | $64,073.74 | | |

## Roof Build E

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Roof Tile, Concrete | 44.12 SQ @ $1,110.00 * | $48,973.20 | $0.00 | $48,973.20 | | |
| Remove Trim, Exterior, 2"x10" | 80.96 LF @ $0.47 | $38.05 | $0.00 | $38.05 | | |
| PERCENTAGE ALLOWANCE FOR FASCIA REPLACEMENT | | | | | | |
| Replace Trim, Exterior, 2"x10" | 80.96 LF @ $6.39 | $517.33 | $0.00 | $517.33 | | |
| Remove Sheathing, Roof, Plywood, 5/8" | 400 SF @ $0.25 | $100.00 | $0.00 | $100.00 | | |
| PERCENTAGE ALLOWANCE FOR WOOD REPLACEMENT | | | | | | |
| Replace Sheathing, Roof, Plywood, 5/8" | 400 SF @ $1.15 | $460.00 | $0.00 | $460.00 | | |
| Special Dumpster, 40 Yard | 2 EA @ $549.03 | $1,098.06 | $0.00 | $1,098.06 | | |
| | | $51,186.64 | $0.00 | $51,186.64 | | |

## Roof Build F

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Roof Tile, Concrete | 29.41 SQ @ $1,110.00 * | $32,645.10 | $0.00 | $32,645.10 | | |
| Remove Trim, Exterior, 2"x10" | 80.96 LF @ $0.47 | $38.05 | $0.00 | $38.05 | | |
| PERCENTAGE ALLOWANCE FOR FASCIA REPLACEMENT | | | | | | |

PDF created with pdfFactory Pro trial version www.pdffactory.com

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Trim, Exterior, 2"x10" | 80.96 LF @ $6.39 | $517.33 | $0.00 | $517.33 |  |  |
| Remove Sheathing, Roof, Plywood, 5/8" | 400 SF @ $0.25 | $100.00 | $0.00 | $100.00 |  |  |
| PERCENTAGE ALLOWANCE FOR WOOD REPLACEMENT |  |  |  |  |  |  |
| Replace Sheathing, Roof, Plywood, 5/8" | 400 SF @ $1.15 | $460.00 | $0.00 | $460.00 |  |  |
| Special Dumpster, 40 Yard | 2 EA @ $549.03 | $1,098.06 | $0.00 | $1,098.06 |  |  |
|  |  | $34,858.54 | $0.00 | $34,858.54 |  |  |

## Roof Pool House

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Roof Tile, Concrete | 6.34 SQ @ $1,010.00 * | $6,403.40 | $0.00 | $6,403.40 |  |  |
| Remove Trim, Exterior, 2"x10" | 10 LF @ $0.47 | $4.70 | $0.00 | $4.70 |  |  |
| PERCENTAGE ALLOWANCE FOR FASCIA REPLACEMENT |  |  |  |  |  |  |
| Replace Trim, Exterior, 2"x10" | 10 LF @ $6.39 | $63.90 | $0.00 | $63.90 |  |  |
| Remove Sheathing, Roof, Plywood, 5/8" | 79 SF @ $0.25 | $19.75 | $0.00 | $19.75 |  |  |
| PERCENTAGE ALLOWANCE FOR WOOD REPLACEMENT |  |  |  |  |  |  |
| Replace Sheathing, Roof, Plywood, 5/8" | 79 SF @ $1.15 | $90.85 | $0.00 | $90.85 |  |  |
|  |  | $6,582.60 | $0.00 | $6,582.60 |  |  |

## Roof Meter Rooms

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Roof Tile, Concrete | 2.64 SQ @ $1,010.00 * | $2,666.40 | $0.00 | $2,666.40 |  |  |
|  |  | $2,666.40 | $0.00 | $2,666.40 |  |  |

## UNIT 11767A (33' x 24' x 8')

792 sf Floor     912 sf Wall     792 sf Ceiling     114 lf Floor     114 lf Ceiling     6,336 cf Volume

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNIT OK | 0 @ $0.00 ʷ | $0.00 | $0.00 | $0.00 | N | N |
|  |  | $0.00 | $0.00 | $0.00 |  |  |

## UNIT 11771A (33' x 24' x 8')

792 sf Floor     912 sf Wall     792 sf Ceiling     114 lf Floor     114 lf Ceiling     6,336 cf Volume

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 96 SF @ $1.08 † | $103.68 | $0.00 | $103.68 |  |  |
| LIVING ROOM 2 SHEETS CEILING 3 SHEETS WALL AROUND WINDOW BASEBOARDS BEDROOM 2-2 SHEETS WALL MASTER 1 SHEET CEILING 1 SHEET WALL |  |  |  |  |  |  |
| Replace Drywall, Ceiling, 5/8", Taped | 106 SF @ $2.42 * | $256.52 | $0.00 | $256.52 |  |  |
| Remove Drywall, Wall, 5/8", Taped | 192 SF @ $0.76 * | $145.92 | $0.00 | $145.92 |  |  |
| Replace Drywall, Wall, 5/8", Taped | 202 SF @ $1.92 * | $387.84 | $0.00 | $387.84 |  |  |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 96 SF @ $0.57 | $54.72 | $0.00 | $54.72 |  |  |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 96 SF @ $1.23 | $118.08 | $0.00 | $118.08 |  |  |

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 192 SF @ $0.46 | $88.32 | $0.00 | $88.32 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 192 SF @ $2.38 | $456.96 | $0.00 | $456.96 | |
| Remove Base Molding, Colonial, 3 1/2" | 25 LF @ $0.24 | $6.00 | $0.00 | $6.00 | |
| Replace Base Molding, Colonial, 3 1/2" | 28 LF @ $4.76 | $133.28 | $0.00 | $133.28 | |
| Special Contents, Move & Protect | 6 HR @ $35.15 | $210.90 | $0.00 | $210.90 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 3 EA @ $129.00 | $387.00 | $0.00 | $387.00 | |
| | | $2,531.62 | $0.00 | $2,531.62 | |

## UNIT 11775A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 32 SF @ $1.08 * | $34.56 | $0.00 | $34.56 | |

BEDROOM 2-2 SHEETS WALL 1 SHEET CEILING REPLACE SLIDER & WOOD FLOORS

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 42 SF @ $2.42 * | $101.64 | $0.00 | $101.64 | |
| Remove Drywall, Wall, 5/8", Taped | 64 SF @ $0.76 * | $48.64 | $0.00 | $48.64 | |
| Replace Drywall, Wall, 5/8", Taped | 74 SF @ $1.92 * | $142.08 | $0.00 | $142.08 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $0.57 | $18.24 | $0.00 | $18.24 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $1.23 | $39.36 | $0.00 | $39.36 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $0.46 | $29.44 | $0.00 | $29.44 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $2.38 | $152.32 | $0.00 | $152.32 | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | |
| Remove Blown Acoustical Ceiling, Heavy | 112.32 SF @ $1.11 | $124.68 | $0.00 | $124.68 | |
| Replace Blown Acoustical Ceiling, Heavy | 112.32 SF @ $1.62 | $181.96 | $0.00 | $181.96 | |
| Remove Door, Sliding, Aluminum, 6' | 1 EA @ $42.18 | $42.18 | $0.00 | $42.18 | |
| Replace Door, Sliding, Aluminum, 6' | 1 EA @ $600.67 | $600.67 | $0.00 | $600.67 | |
| Remove Wood Flooring | 112.32 SF @ $1.01 | $113.44 | $0.00 | $113.44 | |
| Replace Wood Flooring | 112.32 SF @ $9.15 | $1,027.73 | $0.00 | $1,027.73 | |
| | | $3,038.64 | $0.00 | $3,038.64 | |

## UNIT 11779A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 32 SF @ $1.08 * | $34.56 | $0.00 | $34.56 | |

MASTER 1 SHEET CEILING 2 SHEETS WALL POPCORN REPLACE BATHROOM & SLIDING DOOR

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 42 SF @ $2.42 * | $101.64 | $0.00 | $101.64 | |
| Remove Drywall, Wall, 5/8", Taped | 64 SF @ $0.76 * | $48.64 | $0.00 | $48.64 | |
| Replace Drywall, Wall, 5/8", Taped | 74 SF @ $1.92 * | $142.08 | $0.00 | $142.08 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $0.57 | $18.24 | $0.00 | $18.24 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $1.23 | $39.36 | $0.00 | $39.36 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $0.46 | $29.44 | $0.00 | $29.44 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $2.38 | $152.32 | $0.00 | $152.32 | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |

Estimate (MS/B 0410)                    - 4 -                    Aug 6, 2007

Claim # 07-10057

PDF created with pdfFactory Pro trial version www.pdffactory.com

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| Remove Blown Acoustical Ceiling, Heavy | 139.08 SF @ $1.11 | $154.38 | $0.00 | $154.38 | | |
| Replace Blown Acoustical Ceiling, Heavy | 139.08 SF @ $1.62 | $225.31 | $0.00 | $225.31 | | |
| Remove Door, Sliding, Aluminum, 6' | 1 EA @ $42.18 | $42.18 | $0.00 | $42.18 | | |
| Replace Door, Sliding, Aluminum, 6' | 1 EA @ $600.67 | $600.67 | $0.00 | $600.67 | | |
| Remove Door, Interior, Pre-Hung, Panel, With Hardware | 1 EA @ $17.96 | $17.96 | $0.00 | $17.96 | | |

> BATH ROOM DOOR

| | | | | | | |
|---|---|---|---|---|---|---|
| Replace Door, Interior, Pre-Hung, Panel, With Hardware | 1 EA @ $248.66 | $248.66 | $0.00 | $248.66 | | |
| | | **$2,237.14** | **$0.00** | **$2,237.14** | | |

## UNIT 11783A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNIT OK | 0 @ $0.00 | $0.00 | $0.00 | $0.00 | N | N |
| | | **$0.00** | **$0.00** | **$0.00** | | |

## UNIT 11787A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Wall, 5/8", Taped | 32 SF @ $0.76 * | $24.32 | $0.00 | $24.32 | | |

> BEDROOM 2-1 SHEET WALL CAULK WINDOW

| | | | | | | |
|---|---|---|---|---|---|---|
| Replace Drywall, Wall, 5/8", Taped | 42 SF @ $1.92 * | $80.64 | $0.00 | $80.64 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $0.46 | $14.72 | $0.00 | $14.72 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $2.38 | $76.16 | $0.00 | $76.16 | | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| Special Caulk Window (LF) | 24 LF @ $1.07 | $25.68 | $0.00 | $25.68 | | |
| | | **$603.22** | **$0.00** | **$603.22** | | |

## UNIT 11791A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 594 SF @ $1.08 * | $641.52 | $0.00 | $641.52 | | |

> REPLACE 75% OF ALL DRYWALL IN APT AND FLOOR MOLDINGS
> MOLD CLEANUP

| | | | | | | |
|---|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 604 SF @ $2.42 * | $1,461.68 | $0.00 | $1,461.68 | | |
| Remove Drywall, Wall, 5/8", Taped | 1,368 SF @ $0.76 * | $1,039.68 | $0.00 | $1,039.68 | | |
| Replace Drywall, Wall, 5/8", Taped | 1,368 SF @ $1.92 * | $2,626.56 | $0.00 | $2,626.56 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 594 SF @ $0.57 | $338.58 | $0.00 | $338.58 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 594 SF @ $1.23 | $730.62 | $0.00 | $730.62 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 1,368 SF @ $0.46 | $629.28 | $0.00 | $629.28 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 1,368 SF @ $2.38 | $3,255.84 | $0.00 | $3,255.84 | | |

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Base Molding, Colonial, 3 1/2" | 228 LF @ $0.24 | $54.72 | $0.00 | $54.72 | | |
| Replace Base Molding Colonial, 3 1/2" | 228 LF @ $4.76 | $1,085.28 | $0.00 | $1,085.28 | | |
| Special Contents, Move & Protect | 10 HR @ $35.15 | $351.50 | $0.00 | $351.50 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 4 EA @ $129.00 | $516.00 | $0.00 | $516.00 | | |
| Special Mold & Mildew Treatment | 792 SF @ $0.39 | $308.88 | $0.00 | $308.88 | | |
| Remove Blown Acoustical Ceiling, Heavy | 792 SF @ $1.11 | $879.12 | $0.00 | $879.12 | | |
| Replace Blown Acoustical Ceiling, Heavy | 792 SF @ $1.62 | $1,283.04 | $0.00 | $1,283.04 | | |
| | | **$15,384.70** | **$0.00** | **$15,384.70** | | |

## UNIT 11795A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 ʷ | $0.00 | $0.00 | $0.00 | N | N |
| | | **$0.00** | **$0.00** | **$0.00** | | |

## UNIT 11769A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 96 SF @ $1.08 ᵉ | $103.68 | $0.00 | $103.68 | | |
| 2 SHEETS DRYWALL KITCHEN 2 SHEETS WALL R/R CABINETS GUEST BATH 1 SHEET CEILING 1 SHEET WALL & TILE WORK | | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | 106 SF @ $2.42 ˣ | $256.52 | $0.00 | $256.52 | | |
| Remove Drywall, Wall, 5/8", Taped | 96 SF @ $0.76 ˣ | $72.96 | $0.00 | $72.96 | | |
| Replace Drywall, Wall, 5/8", Taped | 106 SF @ $1.92 ˣ | $203.52 | $0.00 | $203.52 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 96 SF @ $0.57 | $54.72 | $0.00 | $54.72 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 96 SF @ $1.23 | $118.08 | $0.00 | $118.08 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 96 SF @ $0.46 | $44.16 | $0.00 | $44.16 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 96 SF @ $2.38 | $228.48 | $0.00 | $228.48 | | |
| Special Contents, Move & Protect | 5 HR @ $35.15 | $175.75 | $0.00 | $175.75 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 2 EA @ $129.00 | $258.00 | $0.00 | $258.00 | | |
| Rem/Reset Cabinet, Base (LF) | 14 LF @ $35.58 | $498.12 | $0.00 | $498.12 | | |
| Rem/Reset Cabinet, Wall (LF) | 21 LF @ $22.91 | $481.11 | $0.00 | $481.11 | | |
| Rem/Reset Range, Freestanding, Electric, 1 Oven, 4-Burner, Good | 1 EA @ $63.30 | $63.30 | $0.00 | $63.30 | | |
| Rem/Reset Refrigerator, w/Top Freezer | 1 EA @ $40.17 | $40.17 | $0.00 | $40.17 | | |
| Rem/Reset Range Hood, Non-Vented | 1 EA @ $52.15 | $52.15 | $0.00 | $52.15 | | |
| Rem/Reset Sink, Kitchen, Stainless Steel | 1 EA @ $160.24 | $160.24 | $0.00 | $160.24 | | |
| Rem/Reset Fixture, Light, Interior | 1 EA @ $52.89 | $52.89 | $0.00 | $52.89 | | |
| Rem/Reset Fixture, Fluorescent, Surfaced Mounted | 3 EA @ $31.56 | $94.68 | $0.00 | $94.68 | | |
| Special Minimum Charge, Ceramic Tile | 1 LS @ $282.62 | $282.62 | $0.00 | $282.62 | | |
| | | **$3,423.55** | **$0.00** | **$3,423.55** | | |

## UNIT 11773A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNIT OK | 0 @ $0.00 ʷ | $0.00 | $0.00 | $0.00 | N | N |
| | | $0.00 | $0.00 | $0.00 | | |

### UNIT 11777A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | | 6,336 cf Volume |
|---|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 96 SF @ $1.08 * | $103.68 | $0.00 | $103.68 | | |

> LIVING ROOM 1 SHEET CEILING POPCORN KITCHEN ALL 2 SHEETS ON CEILING POPCORN CABINETS R/R

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 106 SF @ $2.42 * | $256.52 | $0.00 | $256.52 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 96 SF @ $0.57 | $54.72 | $0.00 | $54.72 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 96 SF @ $1.23 | $118.08 | $0.00 | $118.08 | | |
| Special Contents, Move & Protect | 4 HR @ $35.15 | $140.60 | $0.00 | $140.60 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 2 EA @ $129.00 | $258.00 | $0.00 | $258.00 | | |
| Rem/Reset Cabinet, Wall (LF) | 21 LF @ $22.91 | $481.11 | $0.00 | $481.11 | | |
| Rem/Reset Range Hood, Non-Vented | 1 EA @ $52.15 | $52.15 | $0.00 | $52.15 | | |
| Rem/Reset Fixture, Fluorescent, Surfaced Mounted | 3 EA @ $31.56 | $94.68 | $0.00 | $94.68 | | |
| Remove Blown Acoustical Ceiling, Heavy | 300 SF @ $1.11 | $333.00 | $0.00 | $333.00 | | |
| Replace Blown Acoustical Ceiling, Heavy | 300 SF @ $1.62 | $486.00 | $0.00 | $486.00 | | |
| | | $2,560.94 | $0.00 | $2,560.94 | | |

### UNIT 11781A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | | 6,336 cf Volume |
|---|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 128 SF @ $1.08 * | $138.24 | $0.00 | $138.24 | | |

> LIVING ROOM 3 SHEETS CEILING POPCORN MASTER 1 SHEET POPCORN

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 138 SF @ $2.42 * | $333.96 | $0.00 | $333.96 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 128 SF @ $0.57 | $72.96 | $0.00 | $72.96 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 128 SF @ $1.23 | $157.44 | $0.00 | $157.44 | | |
| Special Contents, Move & Protect | 5 HR @ $35.15 | $175.75 | $0.00 | $175.75 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 2 EA @ $129.00 | $258.00 | $0.00 | $258.00 | | |
| Remove Blown Acoustical Ceiling, Heavy | 439 SF @ $1.11 | $487.29 | $0.00 | $487.29 | | |
| Replace Blown Acoustical Ceiling, Heavy | 439 SF @ $1.62 | $711.18 | $0.00 | $711.18 | | |
| | | $2,517.22 | $0.00 | $2,517.22 | | |

### UNIT 11785A (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | | 6,336 cf Volume |
|---|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Wall, 5/8", Taped | 64 SF @ $0.76 * | $48.64 | $0.00 | $48.64 | | |

> LIVING ROOM 2 SHEETS WALL

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Drywall, Wall, 5/8", Taped | 74 SF @ $1.92 * | $142.08 | $0.00 | $142.08 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $0.46 | $29.44 | $0.00 | $29.44 | | |

Estimate (MS/B 0410)
Claim # 07-10057

-7-

Aug 6, 2007

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $2.38 | $152.32 | $0.00 | $152.32 | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | |
| | | $754.18 | $0.00 | $754.18 | |

## UNIT 11789A (33' x 24' x 8')

792 sf Floor    912 sf Wall    792 sf Ceiling    114 lf Floor    114 lf Ceiling    6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 128 SF @ $1.08 | $138.24 | $0.00 | $138.24 | |

KITCHEN 2 SHEETS POPCORN 2 SHEETS WALL BEDROOM 2 SHEETS POPCORN RECEIPT FOR MONEY SPENT BY TENANT CATEGORY (OTHER)

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 138 SF @ $2.42 | $333.96 | $0.00 | $333.96 | |
| Remove Drywall, Wall, 5/8", Taped | 64 SF @ $0.76 | $48.64 | $0.00 | $48.64 | |
| Replace Drywall, Wall, 5/8", Taped | 74 SF @ $1.92 | $142.08 | $0.00 | $142.08 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 128 SF @ $0.57 | $72.96 | $0.00 | $72.96 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 128 SF @ $1.23 | $157.44 | $0.00 | $157.44 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $0.46 | $29.44 | $0.00 | $29.44 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $2.38 | $152.32 | $0.00 | $152.32 | |
| Special Contents, Move & Protect | 5 HR @ $35.15 | $175.75 | $0.00 | $175.75 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 2 EA @ $129.00 | $258.00 | $0.00 | $258.00 | |
| Remove Blown Acoustical Ceiling, Heavy | 464.82 SF @ $1.11 | $515.95 | $0.00 | $515.95 | |
| Replace Blown Acoustical Ceiling, Heavy | 464.82 SF @ $1.62 | $753.01 | $0.00 | $753.01 | |
| | | $2,960.19 | $0.00 | $2,960.19 | |

## UNIT 11793A (33' x 24' x 8')

792 sf Floor    912 sf Wall    792 sf Ceiling    114 lf Floor    114 lf Ceiling    6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 96 SF @ $1.08 | $103.68 | $0.00 | $103.68 | |

LIVING ROOM 2 SHEETS CEILING 1 SHEET WALL REPLACE SLIDER BEDROOM 1 SHEET CEILING TILE FLOOR CRACKED FROM WATER INTRUSION & BASEBOARDS

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 106 SF @ $2.42 | $256.52 | $0.00 | $256.52 | |
| Remove Drywall, Wall, 5/8", Taped | 32 SF @ $0.76 | $24.32 | $0.00 | $24.32 | |
| Replace Drywall, Wall, 5/8", Taped | 42 SF @ $1.92 | $80.64 | $0.00 | $80.64 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 96 SF @ $0.57 | $54.72 | $0.00 | $54.72 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 96 SF @ $1.23 | $118.08 | $0.00 | $118.08 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $0.46 | $14.72 | $0.00 | $14.72 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $2.38 | $76.16 | $0.00 | $76.16 | |
| Remove Base Molding, Colonial, 3 1/2" | 42.4 LF @ $0.24 | $10.18 | $0.00 | $10.18 | |
| Replace Base Molding, Colonial, 3 1/2" | 45 LF @ $4.76 | $214.20 | $0.00 | $214.20 | |
| Special Contents, Move & Protect | 1 HR @ $35.15 | $35.15 | $0.00 | $35.15 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | |
| Remove Ceramic Floor, Thin Set | 112.32 SF @ $1.52 | $170.73 | $0.00 | $170.73 | |
| Replace Ceramic Floor, Thin Set | 112.32 SF @ $9.32 | $1,046.82 | $0.00 | $1,046.82 | |

PDF created with pdfFactory Pro trial version www.pdffactory.com

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Door, Sliding, Aluminum, 6' | 1 EA @ $42.18 | $42.18 | $0.00 | $42.18 |  |  |
| Replace Door, Sliding, Aluminum, 6' | 1 EA @ $600.67 | $600.67 | $0.00 | $600.67 |  |  |
|  |  | $3,160.17 | $0.00 | $3,160.17 |  |  |

### UNIT 11797A  (33'  x  24'  x  8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNIT OK | 0 @ $0.00 ʷ | $0.00 | $0.00 | $0.00 | N | N |
|  |  | $0.00 | $0.00 | $0.00 |  |  |

### UNIT 3020B  (33'  x  24'  x  8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 134 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Door, Sliding, Aluminum, 6' | 1 EA @ $42.18 | $42.18 | $0.00 | $42.18 |  |  |
| REPLACE SLIDERS RESCREEN WINDOWS CAULK WINDOWS | | | | | | |
| Replace Door, Sliding, Aluminum, 6' | 1 EA @ $600.67 | $600.67 | $0.00 | $600.67 |  |  |
| Special Remove & Replace Window Screen | 40 SF @ $2.02 | $80.80 | $0.00 | $80.80 |  |  |
| Remove Drywall, Wall, 5/8", Taped | 32 SF @ $0.76 * | $24.32 | $0.00 | $24.32 |  |  |
| Replace Drywall, Wall, 5/8", Taped | 42 SF @ $1.92 * | $80.64 | $0.00 | $80.64 |  |  |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 |  |  |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 |  |  |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 |  |  |
| Special Caulk Window (LF) | 40 LF @ $1.07 | $42.80 | $0.00 | $42.80 |  |  |
|  |  | $1,253.11 | $0.00 | $1,253.11 |  |  |

### UNIT 3016B  (33'  x  24'  x  8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 ʷ | $0.00 | $0.00 | $0.00 | N | N |
|  |  | $0.00 | $0.00 | $0.00 |  |  |

### UNIT3012B  (33'  x  24'  x  8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

|  |  | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Wall, 5/8", Taped | 96 SF @ $0.76 * | $72.96 | $0.00 | $72.96 |  |  |
| LIVING ROOM 2 SHEETS WALL. REPLACE SCREENS BATHROOM 1 SHEET WALL | | | | | | |
| Replace Drywall, Wall, 5/8", Taped | 106 SF @ $1.92 * | $203.52 | $0.00 | $203.52 |  |  |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 96 SF @ $0.46 | $44.16 | $0.00 | $44.16 |  |  |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 96 SF @ $2.38 | $228.48 | $0.00 | $228.48 |  |  |
| Special Contents, Move & Protect | 5 HR @ $35.15 | $175.75 | $0.00 | $175.75 |  |  |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 |  |  |
| Rem/Reset Furniture | 2 EA @ $129.00 | $258.00 | $0.00 | $258.00 |  |  |
| Special Remove & Replace Window Screen | 82 SF @ $2.02 | $165.64 | $0.00 | $165.64 |  |  |
| Special Minimum Charge, Ceramic Tile | 1 LS @ $282.62 | $282.62 | $0.00 | $282.62 |  |  |

Estimate (MS/B 0410)                                     - 9 -                                     Aug 6, 2007
Claim # 07-10057

| | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|
| | $1,613.53 | $0.00 | $1,613.53 | | |

**UNIT 3008B** (33' x 24' x 8')
792 sf Floor     912 sf Wall     792 sf Ceiling     114 lf Floor     114 lf Ceiling     6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 32 SF @ $1.08 * | $34.56 | $0.00 | $34.56 | | |

MASTER 1 SHEET POPCORN CEILING 2 SHEETS WALL WOOD FLOOR DAMAGE SLIDER REPLACE

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 42 SF @ $2.42 * | $101.64 | $0.00 | $101.64 | | |
| Remove Drywall, Wall, 5/8", Taped | 64 SF @ $0.76 * | $48.64 | $0.00 | $48.64 | | |
| Replace Drywall, Wall, 5/8", Taped | 74 SF @ $1.92 * | $142.08 | $0.00 | $142.08 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $0.57 | $18.24 | $0.00 | $18.24 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $1.23 | $39.36 | $0.00 | $39.36 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $0.46 | $29.44 | $0.00 | $29.44 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $2.38 | $152.32 | $0.00 | $152.32 | | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| Remove Blown Acoustical Ceiling, Heavy | 139.08 SF @ $1.11 | $154.38 | $0.00 | $154.38 | | |
| Replace Blown Acoustical Ceiling, Heavy | 139.08 SF @ $1.62 | $225.31 | $0.00 | $225.31 | | |
| Remove Wood Flooring | 139.08 SF @ $1.01 | $140.47 | $0.00 | $140.47 | | |
| Replace Wood Flooring | 139.08 SF @ $9.15 | $1,272.58 | $0.00 | $1,272.58 | | |
| Remove Door, Sliding, Aluminum, 6' | 1 EA @ $42.18 | $42.18 | $0.00 | $42.18 | | |
| Replace Door, Sliding, Aluminum, 6' | 1 EA @ $600.67 | $600.67 | $0.00 | $600.67 | | |
| | | $3,383.57 | $0.00 | $3,383.57 | | |

**UNIT 3004B** (33' x 24' x 8')
792 sf Floor     912 sf Wall     792 sf Ceiling     114 lf Floor     114 lf Ceiling     6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNIT OK | 0 @ $0.00 w | $0.00 | $0.00 | $0.00 | N | N |
| | | $0.00 | $0.00 | $0.00 | | |

**UNIT 3000B** (33' x 24' x 8')
792 sf Floor     912 sf Wall     792 sf Ceiling     114 lf Floor     114 lf Ceiling     6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 w | $0.00 | $0.00 | $0.00 | N | N |
| | | $0.00 | $0.00 | $0.00 | | |

**UNIT 3022B** (33' x 24' x 8')
792 sf Floor     912 sf Wall     792 sf Ceiling     114 lf Floor     114 lf Ceiling     6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 w | $0.00 | $0.00 | $0.00 | N | N |
| | | $0.00 | $0.00 | $0.00 | | |

Aug 6, 2007

Estimate (MS/B 0410)
Claim # 07-10057

PDF created with pdfFactory Pro trial version www.pdffactory.com

## UNIT 3018B (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume | | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| Remove Drywall, Ceiling, 5/8", Taped | | 160 SF @ $1.08 ^ | | $172.80 | $0.00 | $172.80 | |

MASTER 2 SHEETS POPCORN BEDROOM 2-3 SHEETS POPCORN

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | | 170 SF @ $2.42 ^ | | $411.40 | $0.00 | $411.40 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | | 160 SF @ $0.57 | | $91.20 | $0.00 | $91.20 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | | 160 SF @ $1.23 | | $196.80 | $0.00 | $196.80 | |
| Special Contents, Move & Protect | | 4 HR @ $35.15 | | $140.60 | $0.00 | $140.60 | |
| Special Dust Protection | | 912 SF @ $0.20 | | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | | 2 EA @ $129.00 | | $258.00 | $0.00 | $258.00 | |
| Remove Blown Acoustical Ceiling, Heavy | | 251.4 SF @ $1.11 | | $279.05 | $0.00 | $279.05 | |
| Replace Blown Acoustical Ceiling, Heavy | | 251.4 SF @ $1.62 | | $407.27 | $0.00 | $407.27 | |
| | | | | $2,139.52 | $0.00 | $2,139.52 | |

## UNIT 3014B (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume | | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| Remove Drywall, Wall, 5/8", Taped | | 96 SF @ $0.76 ^ | | $72.96 | $0.00 | $72.96 | |

LIVING ROOM 3 SHEETS WALL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Replace Drywall, Wall, 5/8", Taped | | 106 SF @ $1.92 ^ | | $203.52 | $0.00 | $203.52 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | | 96 SF @ $0.46 | | $44.16 | $0.00 | $44.16 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | | 96 SF @ $2.38 | | $228.48 | $0.00 | $228.48 | |
| Special Contents, Move & Protect | | 3 HR @ $35.15 | | $105.45 | $0.00 | $105.45 | |
| Special Dust Protection | | 912 SF @ $0.20 | | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | | 1 EA @ $129.00 | | $129.00 | $0.00 | $129.00 | |
| | | | | $965.97 | $0.00 | $965.97 | |

## UNIT 3010B (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume | | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| Remove Door, Sliding, Aluminum, 6' | | 2 EA @ $42.18 | | $84.36 | $0.00 | $84.36 | |

REPLACE SLIDERS LIVING ROOM & MASTER

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Replace Door, Sliding, Aluminum, 6' | | 2 EA @ $600.67 | | $1,201.34 | $0.00 | $1,201.34 | |
| | | | | $1,285.70 | $0.00 | $1,285.70 | |

## UNIT 3006B (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume | | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| Special Remove & Replace Window Screen | | 124 SF @ $2.02 | | $250.48 | $0.00 | $250.48 | |

RESCREEN WINDOWS BEDROOM 2-1 SHEET POPCORN

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | | 32 SF @ $1.08 ^ | | $34.56 | $0.00 | $34.56 | |
| Replace Drywall, Ceiling, 5/8", Taped | | 42 SF @ $2.42 ^ | | $101.64 | $0.00 | $101.64 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | | 32 SF @ $0.57 | | $18.24 | $0.00 | $18.24 | |

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $1.23 | $39.36 | $0.00 | $39.36 | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | |
| Remove Blown Acoustical Ceiling, Heavy | 112.32 SF @ $1.11 | $124.68 | $0.00 | $124.68 | |
| Replace Blown Acoustical Ceiling, Heavy | 112.32 SF @ $1.62 | $181.96 | $0.00 | $181.96 | |
| | | $1,132.62 | $0.00 | $1,132.62 | |

## UNIT 3002B (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Window, Single Hung, Aluminum | 3 EA @ $28.12 | $84.36 | $0.00 | $84.36 | |
| REPLACE ALL WINDOWS AND SLIDERS AND DRYWALL AROUND WINDOWS | | | | | |
| Replace Window, Single Hung, Aluminum | 3 EA @ $222.96 | $668.88 | $0.00 | $668.88 | |
| Remove Door, Sliding, Aluminum, 6' | 2 EA @ $42.18 | $84.36 | $0.00 | $84.36 | |
| Replace Door, Sliding, Aluminum, 6' | 2 EA @ $600.67 | $1,201.34 | $0.00 | $1,201.34 | |
| Remove Drywall, Wall, 5/8", Taped | 192 SF @ $0.76 * | $145.92 | $0.00 | $145.92 | |
| Replace Drywall, Wall, 5/8", Taped | 202 SF @ $1.92 * | $387.84 | $0.00 | $387.84 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 192 SF @ $0.46 | $88.32 | $0.00 | $88.32 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 192 SF @ $2.38 | $456.96 | $0.00 | $456.96 | |
| Special Contents, Move & Protect | 8 HR @ $35.15 | $281.20 | $0.00 | $281.20 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 4 EA @ $129.00 | $516.00 | $0.00 | $516.00 | |
| | | $4,097.58 | $0.00 | $4,097.58 | |

## UNIT 3026C (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Wall, 5/8", Taped | 32 SF @ $0.76 * | $24.32 | $0.00 | $24.32 | |
| LIVING ROOM 1 SHEET WALL BY WINDOW | | | | | |
| Replace Drywall, Wall, 5/8", Taped | 42 SF @ $1.92 * | $80.64 | $0.00 | $80.64 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $0.46 | $14.72 | $0.00 | $14.72 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $2.38 | $76.16 | $0.00 | $76.16 | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | |
| | | $577.54 | $0.00 | $577.54 | |

## UNIT 3030C (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 256 SF @ $1.08 * | $276.48 | $0.00 | $276.48 | |
| MASTER ALL CEILING BEDROOM 2 ALL CEILING 25% WALL LIVING ROOM 2 SHEETS WALL. | | | | | |

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 266 SF @ $2.42 * | $643.72 | $0.00 | $643.72 | | |
| Remove Drywall, Wall, 5/8", Taped | 160 SF @ $0.76 * | $121.60 | $0.00 | $121.60 | | |
| Replace Drywall, Wall, 5/8", Taped | 170 SF @ $1.92 * | $326.40 | $0.00 | $326.40 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 256 SF @ $0.57 | $145.92 | $0.00 | $145.92 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 256 SF @ $1.23 | $314.88 | $0.00 | $314.88 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 160 SF @ $0.46 | $73.60 | $0.00 | $73.60 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 160 SF @ $2.38 | $380.80 | $0.00 | $380.80 | | |
| Special Contents, Move & Protect | 8 HR @ $35.15 | $281.20 | $0.00 | $281.20 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 3 EA @ $129.00 | $387.00 | $0.00 | $387.00 | | |
| Remove Blown Acoustical Ceiling, Heavy | 251.4 SF @ $1.11 | $279.05 | $0.00 | $279.05 | | |
| Replace Blown Acoustical Ceiling, Heavy | 251.4 SF @ $1.62 | $407.27 | $0.00 | $407.27 | | |
| | | $3,820.32 | $0.00 | $3,820.32 | | |

## UNIT 3034C (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | | 6,336 cf Volume | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| UNKNOWN | | 0 @ $0.00 w | | $0.00 | $0.00 | $0.00 | N  N |
| | | | | $0.00 | $0.00 | $0.00 | |

## UNIT 3038C (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | | 6,336 cf Volume | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| UNKNOWN | | 0 @ $0.00 w | | $0.00 | $0.00 | $0.00 | N  N |
| | | | | $0.00 | $0.00 | $0.00 | |

## UNIT 3024C (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | | 6,336 cf Volume | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| UNKNOWN | | 0 @ $0.00 w | | $0.00 | $0.00 | $0.00 | N  N |
| | | | | $0.00 | $0.00 | $0.00 | |

## UNIT 3028C (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | | 6,336 cf Volume | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| UNKNOWN | | 0 @ $0.00 w | | $0.00 | $0.00 | $0.00 | N  N |
| | | | | $0.00 | $0.00 | $0.00 | |

## UNIT 3032C (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | | 6,336 cf Volume | |
|---|---|---|---|---|---|---|---|
| | | | | Repl. Cost | Depr. | ACV | OP RD |
| Special Remove & Replace Window Screen | | 124 SF @ $2.02 | | $250.48 | $0.00 | $250.48 | |

> REPLACE ALL SCREENS

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|
| | $250.48 | $0.00 | $250.48 | |

### UNIT 3036C  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 32 SF @ $1.08 * | $34.56 | $0.00 | $34.56 | |
| MASTER 1 SHEET CEILING 1 SHEET WALL NEW SLIDING DOOR | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | 42 SF @ $2.42 * | $101.64 | $0.00 | $101.64 | |
| Remove Drywall, Wall, 5/8", Taped | 32 SF @ $0.76 * | $24.32 | $0.00 | $24.32 | |
| Replace Drywall, Wall, 5/8", Taped | 42 SF @ $1.92 * | $80.64 | $0.00 | $80.64 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $0.57 | $18.24 | $0.00 | $18.24 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $1.23 | $39.36 | $0.00 | $39.36 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $0.46 | $14.72 | $0.00 | $14.72 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $2.38 | $76.16 | $0.00 | $76.16 | |
| Special Contents, Move & Protect | 1 HR @ $35.15 | $35.15 | $0.00 | $35.15 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | |
| Remove Door, Sliding, Aluminum, 6' | 1 EA @ $42.18 | $42.18 | $0.00 | $42.18 | |
| Replace Door, Sliding, Aluminum, 6' | 1 EA @ $600.67 | $600.67 | $0.00 | $600.67 | |
| | | $1,379.04 | $0.00 | $1,379.04 | |

### UNIT 3025D  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 w | $0.00 | $0.00 | $0.00 | N  N |
| | | $0.00 | $0.00 | $0.00 | |

### UNIT 3029D  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 64 SF @ $1.08 * | $69.12 | $0.00 | $69.12 | |
| MASTER 3 SHEET WALL 1 SHEET CEILING MASTER BATH ALL CEILING | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | 74 SF @ $2.42 * | $179.08 | $0.00 | $179.08 | |
| Remove Drywall, Wall, 5/8", Taped | 96 SF @ $0.76 * | $72.96 | $0.00 | $72.96 | |
| Replace Drywall, Wall, 5/8", Taped | 106 SF @ $1.92 * | $203.52 | $0.00 | $203.52 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 64 SF @ $0.57 | $36.48 | $0.00 | $36.48 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 64 SF @ $1.23 | $78.72 | $0.00 | $78.72 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 96 SF @ $0.46 | $44.16 | $0.00 | $44.16 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 96 SF @ $2.38 | $228.48 | $0.00 | $228.48 | |
| Special Contents, Move & Protect | 3 HR @ $35.15 | $105.45 | $0.00 | $105.45 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | |
| | | $1,329.37 | $0.00 | $1,329.37 | |

PDF created with pdfFactory Pro trial version www.pdffactory.com

## UNIT 3033D  (33' x 24' x 8')

792 sf Floor        912 sf Wall        792 sf Ceiling        114 lf Floor        114 lf Ceiling        6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 ʷ | $0.00 | $0.00 | $0.00 | N | N |
| | | $0.00 | $0.00 | $0.00 | | |

## UNIT 3037D  (33' x 24' x 8')

792 sf Floor        912 sf Wall        792 sf Ceiling        114 lf Floor        114 lf Ceiling        6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 792 SF @ $1.08 ᵉ | $855.36 | $0.00 | $855.36 | |

REPLACE ALL WALLS REPLACE ALL CEILINGS ALL BASE
MOLDINGS MOLD CLEANUP

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 831.6 SF @ $0.73 ᵉ | $607.07 | Material | | |
| | 792 SF @ $1.69 | $1,338.48 | Labor | | |
| | | $1,945.55 | $0.00 | $1,945.55 | |
| Remove Drywall, Wall, 5/8", Taped | 1,824 SF @ $0.76 ᵉ | $1,386.24 | $0.00 | $1,386.24 | |
| Replace Drywall, Wall, 5/8", Taped | 1,924 SF @ $1.92 ᵉ | $3,694.08 | $0.00 | $3,694.08 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 792 SF @ $0.57 | $451.44 | $0.00 | $451.44 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 792 SF @ $1.23 | $974.16 | $0.00 | $974.16 | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 1,824 SF @ $0.46 | $839.04 | $0.00 | $839.04 | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 1,824 SF @ $2.38 | $4,341.12 | $0.00 | $4,341.12 | |
| Remove Base Molding, Colonial, 3 1/2" | 442 LF @ $0.24 | $106.08 | $0.00 | $106.08 | |
| Replace Base Molding, Colonial, 3 1/2" | 452 LF @ $4.76 | $2,151.52 | $0.00 | $2,151.52 | |
| Special Contents, Move & Protect | 10 HR @ $35.15 | $351.50 | $0.00 | $351.50 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 5 EA @ $129.00 | $645.00 | $0.00 | $645.00 | |
| Special Mold & Mildew Treatment | 792 SF @ $0.39 | $308.88 | $0.00 | $308.88 | |
| | | $18,232.37 | $0.00 | $18,232.37 | |

## UNIT 3023D  (33' x 24' x 8')

792 sf Floor        912 sf Wall        792 sf Ceiling        114 lf Floor        114 lf Ceiling        6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 ʷ | $0.00 | $0.00 | $0.00 | N | N |
| | | $0.00 | $0.00 | $0.00 | | |

## UNIT 3027D  (33' x 24' x 8')

792 sf Floor        912 sf Wall        792 sf Ceiling        114 lf Floor        114 lf Ceiling        6,336 cf Volume

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 32 SF @ $1.08 ᵉ | $34.56 | $0.00 | $34.56 | |

BEDROOM 2 1 SHEET POPCORN CEILING

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Replace Drywall, Ceiling, 5/8", Taped | 42 SF @ $2.42 ᵉ | $101.64 | $0.00 | $101.64 | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $0.57 | $18.24 | $0.00 | $18.24 | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $1.23 | $39.36 | $0.00 | $39.36 | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | |

Estimate (MS/B 0410)                                        - 15 -                                        Aug 6, 2007
Claim # 07-10057

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Blown Acoustical Ceiling, Heavy | 112.32 SF @ $1.11 | $124.68 | $0.00 | $124.68 | | |
| Replace Blown Acoustical Ceiling, Heavy | 112.32 SF @ $1.62 | $181.96 | $0.00 | $181.96 | | |
| | | $882.14 | $0.00 | $882.14 | | |

## UNIT 3031D  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 64 SF @ $1.08 * | $69.12 | $0.00 | $69.12 | | |
| KITCHEN ALL POPCORN CEILING R/R CABINETS | | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | 74 SF @ $2.42 * | $179.08 | $0.00 | $179.08 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 64 SF @ $0.57 | $36.48 | $0.00 | $36.48 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 64 SF @ $1.23 | $78.72 | $0.00 | $78.72 | | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| Rem/Reset Cabinet, Wall (LF) | 21 LF @ $22.91 | $481.11 | $0.00 | $481.11 | | |
| Rem/Reset Fixture, Fluorescent, Surfaced Mounted | 3 EA @ $31.56 | $94.68 | $0.00 | $94.68 | | |
| Remove Blown Acoustical Ceiling, Heavy | 52.5 SF @ $1.11 | $58.28 | $0.00 | $58.28 | | |
| Replace Blown Acoustical Ceiling, Heavy | 52.5 SF @ $1.62 | $85.05 | $0.00 | $85.05 | | |
| | | $1,464.22 | $0.00 | $1,464.22 | | |

## UNIT 3035D  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 * | $0.00 | $0.00 | $0.00 | N | N |
| | | $0.00 | $0.00 | $0.00 | | |

## UNIT 3011E  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 32 SF @ $1.08 * | $34.56 | $0.00 | $34.56 | | |
| LIVING ROOM 1 SHEET POPCORN CEILING 3 SHEETS WALL REPLACE 1 WINDOW & ENTRY DOOR | | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | 42 SF @ $2.42 * | $101.64 | $0.00 | $101.64 | | |
| Remove Drywall, Wall, 5/8", Taped | 96 SF @ $0.76 * | $72.96 | $0.00 | $72.96 | | |
| Replace Drywall, Wall, 5/8", Taped | 106 SF @ $1.92 * | $203.52 | $0.00 | $203.52 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $0.57 | $18.24 | $0.00 | $18.24 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $1.23 | $39.36 | $0.00 | $39.36 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 96 SF @ $0.46 | $44.16 | $0.00 | $44.16 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 96 SF @ $2.38 | $228.48 | $0.00 | $228.48 | | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| Remove Blown Acoustical Ceiling, Heavy | 300 SF @ $1.11 | $333.00 | $0.00 | $333.00 | | |
| Replace Blown Acoustical Ceiling, Heavy | 300 SF @ $1.62 | $486.00 | $0.00 | $486.00 | | |
| Remove Window, Single Hung, Aluminum, Large | 2 EA @ $28.12 | $56.24 | $0.00 | $56.24 | | |

PDF created with pdfFactory Pro trial version www.pdffactory.com

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Replace Window, Single Hung, Aluminum, Large | 2 EA @ $222.96 | $445.92 | $0.00 | $445.92 | | |
| Remove Window Mullion, Aluminum | 3 LF @ $0.81 | $2.43 | $0.00 | $2.43 | | |
| Replace Window Mullion, Aluminum | 3 LF @ $4.29 | $12.87 | $0.00 | $12.87 | | |
| Remove Door, Ext., Metal, Pre-Hung, Panel | 1 EA @ $17.96 | $17.96 | $0.00 | $17.96 | | |
| Replace Door, Ext., Metal, Pre-Hung, Panel | 1 EA @ $498.67 | $498.67 | $0.00 | $498.67 | | |
| | | $2,977.71 | $0.00 | $2,977.71 | | |

### UNIT 3015E  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| FORCLOSURE | 0 @ $0.00 ᵂ | $0.00 | $0.00 | $0.00 | N | N |
| | | $0.00 | $0.00 | $0.00 | | |

### UNIT 3019E  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 64 SF @ $1.08 ᵀ | $69.12 | $0.00 | $69.12 | | |
| LIVING ROOM 2 SHEETS CEILING 2 SHEETS WALL RECEIPTS FOR MONEY SPENT BY TENANT IN CATEGORY (OTHER) | | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | 74 SF @ $2.42 ᵀ | $179.08 | $0.00 | $179.08 | | |
| Remove Drywall, Wall, 5/8", Taped | 64 SF @ $0.76 ᵀ | $48.64 | $0.00 | $48.64 | | |
| Replace Drywall, Wall, 5/8", Taped | 74 SF @ $1.92 ᵀ | $142.08 | $0.00 | $142.08 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 64 SF @ $0.57 | $36.48 | $0.00 | $36.48 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 64 SF @ $1.23 | $78.72 | $0.00 | $78.72 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $0.46 | $29.44 | $0.00 | $29.44 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 64 SF @ $2.38 | $152.32 | $0.00 | $152.32 | | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| | | $1,117.58 | $0.00 | $1,117.58 | | |

### UNIT 3013E  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

| | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 32 SF @ $1.08 ᵀ | $34.56 | $0.00 | $34.56 | | |
| 1 SHEET CEILING KNOCKDOWN | | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | 42 SF @ $2.42 ᵀ | $101.64 | $0.00 | $101.64 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $0.57 | $18.24 | $0.00 | $18.24 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 32 SF @ $1.23 | $39.36 | $0.00 | $39.36 | | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| Remove Texture, Ceiling Knockdown | 139.08 SF @ $0.91 | $126.56 | $0.00 | $126.56 | | |
| Replace Texture, Ceiling Knockdown | 139.08 SF @ $1.13 | $157.16 | $0.00 | $157.16 | | |
| | | $859.22 | $0.00 | $859.22 | | |

Claim # 07-10057

PDF created with pdfFactory Pro trial version www.pdffactory.com

## UNIT 3017E (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume | | |

| | | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | | 64 SF @ $1.08 * | $69.12 | $0.00 | $69.12 | | |
| | MASTER 2 SHEETS POPCORN CEILING | | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | | 74 SF @ $2.42 * | $179.08 | $0.00 | $179.08 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | | 64 SF @ $0.57 | $36.48 | $0.00 | $36.48 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | | 64 SF @ $1.23 | $78.72 | $0.00 | $78.72 | | |
| Special Contents, Move & Protect | | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| Remove Blown Acoustical Ceiling, Heavy | | 139.08 SF @ $1.11 | $154.38 | $0.00 | $154.38 | | |
| Replace Blown Acoustical Ceiling, Heavy | | 139.08 SF @ $1.62 | $225.31 | $0.00 | $225.31 | | |
| | | | $1,124.79 | $0.00 | $1,124.79 | | |

## UNIT 3021E (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume | | |

| | | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | | 160 SF @ $1.08 * | $172.80 | $0.00 | $172.80 | | |
| | LIVING ROOM 3 SHEETS CEILING 3 SHEETS WALL REPLACE SLIDING DOOR BEDROOM 2-1 SHEET CEILING MASTER 1 SHEET CEILING 1 SHEET WALL CAULK WINDOWS | | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | | 170 SF @ $2.42 * | $411.40 | $0.00 | $411.40 | | |
| Remove Drywall, Wall, 5/8", Taped | | 160 SF @ $0.76 * | $121.60 | $0.00 | $121.60 | | |
| Replace Drywall, Wall, 5/8", Taped | | 170 SF @ $1.92 * | $326.40 | $0.00 | $326.40 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | | 160 SF @ $0.57 | $91.20 | $0.00 | $91.20 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | | 160 SF @ $1.23 | $196.80 | $0.00 | $196.80 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | | 160 SF @ $0.46 | $73.60 | $0.00 | $73.60 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | | 160 SF @ $2.38 | $380.80 | $0.00 | $380.80 | | |
| Special Contents, Move & Protect | | 6 HR @ $35.15 | $210.90 | $0.00 | $210.90 | | |
| Special Dust Protection | | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | | 3 EA @ $129.00 | $387.00 | $0.00 | $387.00 | | |
| Remove Door, Sliding, Aluminum, 6' | | 1 EA @ $42.18 | $42.18 | $0.00 | $42.18 | | |
| Replace Door, Sliding, Aluminum, 6' | | 1 EA @ $600.67 | $600.67 | $0.00 | $600.67 | | |
| Special Caulk Window (LF) | | 24 LF @ $1.07 | $25.68 | $0.00 | $25.68 | | |
| | | | $3,223.43 | $0.00 | $3,223.43 | | |

## UNIT 3039F (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume | | |

| | | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|---|
| UNKNOWN | | 0 @ $0.00 * | $0.00 | $0.00 | $0.00 | N | N |
| | | | $0.00 | $0.00 | $0.00 | | |

## UNIT 3043F (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume | | |

| | | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|---|

PDF created with pdfFactory Pro trial version www.pdffactory.com

|  | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| UNKNOWN | 0 @ $0.00 * | $0.00 | $0.00 | $0.00 | N | N |
|  | | $0.00 | $0.00 | $0.00 | | |

## UNIT 3041F  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

|  | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Drywall, Ceiling, 5/8", Taped | 64 SF @ $1.08 * | $69.12 | $0.00 | $69.12 | | |
| MASTER 2 SHEETS POPCORN CEILING | | | | | | |
| Replace Drywall, Ceiling, 5/8", Taped | 74 SF @ $2.42 * | $179.08 | $0.00 | $179.08 | | |
| Remove Insulation, Ceiling, Blown, Cellulose, 15" | 64 SF @ $0.57 | $36.48 | $0.00 | $36.48 | | |
| Replace Insulation, Ceiling, Blown, Cellulose, 15" | 64 SF @ $1.23 | $78.72 | $0.00 | $78.72 | | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
| Remove Blown Acoustical Ceiling, Heavy | 139.08 SF @ $1.11 | $154.38 | $0.00 | $154.38 | | |
| Replace Blown Acoustical Ceiling, Heavy | 139.08 SF @ $1.62 | $225.31 | $0.00 | $225.31 | | |
|  | | $1,124.79 | $0.00 | $1,124.79 | | |

## UNIT 3045F  (33' x 24' x 8')

| 792 sf Floor | 912 sf Wall | 792 sf Ceiling | 114 lf Floor | 114 lf Ceiling | 6,336 cf Volume |
|---|---|---|---|---|---|

|  | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Door, Sliding, Aluminum, 6' | 1 EA @ $42.18 | $42.18 | $0.00 | $42.18 | | |
| REPLACE SLIDER 1 SHEET WALL AROUND SLIDER CAULK WINDOWS | | | | | | |
| Replace Door, Sliding, Aluminum, 6' | 1 EA @ $600.67 | $600.67 | $0.00 | $600.67 | | |
| Remove Drywall, Wall, 5/8", Taped | 32 SF @ $0.76 * | $24.32 | $0.00 | $24.32 | | |
| Replace Drywall, Wall, 5/8", Taped | 42 SF @ $1.92 * | $80.64 | $0.00 | $80.64 | | |
| Remove Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $0.46 | $14.72 | $0.00 | $14.72 | | |
| Replace Insulation, Wall, Blown, Cellulose, 5 1/2" | 32 SF @ $2.38 | $76.16 | $0.00 | $76.16 | | |
| Special Caulk Window (LF) | 42 LF @ $1.07 | $44.94 | $0.00 | $44.94 | | |
| Special Contents, Move & Protect | 2 HR @ $35.15 | $70.30 | $0.00 | $70.30 | | |
| Special Dust Protection | 912 SF @ $0.20 | $182.40 | $0.00 | $182.40 | | |
| Rem/Reset Furniture | 1 EA @ $129.00 | $129.00 | $0.00 | $129.00 | | |
|  | | $1,265.33 | $0.00 | $1,265.33 | | |

## EXTERIOR A

|  | | Repl. Cost | Depr. | ACV | OP | RD |
|---|---|---|---|---|---|---|
| Remove Screen Porch Panels | 2,176 SF @ $0.70 | $1,523.20 | $0.00 | $1,523.20 | | |
| Replace Screen Porch Panels | 2,393.6 SF @ $3.60 | $8,616.96 | $0.00 | $8,616.96 | | |
| Remove Door, Aluminum, With Screen, 1/2 Louver | 6 EA @ $12.78 | $76.68 | $0.00 | $76.68 | | |
| Replace Door, Aluminum, With Screen, 1/2 Louver | 6 EA @ $282.99 | $1,697.94 | $0.00 | $1,697.94 | | |
| Replace Railing, Aluminum | 16 LF @ $38.98 | $623.68 | $0.00 | $623.68 | | |
| Remove Siding, Cedar, T&G, 1"x 8" | 3,011 SF @ $0.25 | $752.75 | $0.00 | $752.75 | | |
| Replace Siding, Cedar, T&G, 1"x 8" | 3,763.95 SF @ $5.19 | $19,534.90 | $0.00 | $19,534.90 | | |
| Clean Pressure/Power Wash Bldg. | 13,836.4 SF @ $0.36 * | $4,981.10 | $0.00 | $4,981.10 | | |

Estimate (MS/B 0410)                                    - 19 -                                    Aug 6, 2007
Claim # 07-10057

| | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|
| Paint Masonry-per SF, 2 Coats | 13,836.4 SF @ $0.91 | $12,591.12 | $0.00 | $12,591.12 | |
| Paint Trim, Exterior, 2"x10" | 568 LF @ $1.27 | $721.36 | $0.00 | $721.36 | |
| | | $51,119.69 | $0.00 | $51,119.69 | |

## EXTERIOR B

| | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|
| Remove Screen Porch Panels | 1,632 SF @ $0.70 | $1,142.40 | $0.00 | $1,142.40 | |
| Replace Screen Porch Panels | 1,795.2 SF @ $3.60 | $6,462.72 | $0.00 | $6,462.72 | |
| Remove Door, Aluminum, With Screen, 1/2 Louver | 4 EA @ $12.78 | $51.12 | $0.00 | $51.12 | |
| Replace Door, Aluminum, With Screen, 1/2 Louver | 4 EA @ $282.99 | $1,131.96 | $0.00 | $1,131.96 | |
| Remove Siding, Cedar, T&G, 1"x 8" | 2,249.6 SF @ $0.25 | $562.40 | $0.00 | $562.40 | |
| Replace Siding, Cedar, T&G, 1"x 8" | 2,812 SF @ $5.19 | $14,594.28 | $0.00 | $14,594.28 | |
| Clean Pressure/Power Wash Bldg. | 10,211.3 SF @ $0.36 ⁺ | $3,676.07 | $0.00 | $3,676.07 | |
| Paint Masonry-per SF, 2 Coats | 10,211.3 SF @ $0.91 | $9,292.28 | $0.00 | $9,292.28 | |
| Paint Trim, Exterior, 2"x10" | 419 LF @ $1.27 | $532.13 | $0.00 | $532.13 | |
| | | $37,445.36 | $0.00 | $37,445.36 | |

## EXTERIOR C

| | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|
| Remove Screen Porch Panels | 1,056 SF @ $0.70 | $739.20 | $0.00 | $739.20 | |
| Replace Screen Porch Panels | 1,161.6 SF @ $3.60 | $4,181.76 | $0.00 | $4,181.76 | |
| Remove Enclosure, Screened | 32 SF @ $0.39 | $12.48 | $0.00 | $12.48 | |
| Replace Enclosure, Screened | 32 SF @ $13.99 | $447.68 | $0.00 | $447.68 | |
| Remove Door, Aluminum, With Screen, 1/2 Louver | 4 EA @ $12.78 | $51.12 | $0.00 | $51.12 | |
| Replace Door, Aluminum, With Screen, 1/2 Louver | 4 EA @ $282.99 | $1,131.96 | $0.00 | $1,131.96 | |
| Remove Siding, Cedar, T&G, 1"x 8" | 1,283.9 SF @ $0.25 | $320.98 | $0.00 | $320.98 | |
| Replace Siding, Cedar, T&G, 1"x 8" | 1,605 SF @ $5.19 | $8,329.95 | $0.00 | $8,329.95 | |
| Clean Pressure/Power Wash Bldg. | 6,696.2 SF @ $0.36 ⁺ | $2,410.63 | $0.00 | $2,410.63 | |
| Paint Masonry-per SF, 2 Coats | 6,696.2 SF @ $0.91 | $6,093.54 | $0.00 | $6,093.54 | |
| Paint Trim, Exterior, 2"x10" | 272 LF @ $1.27 | $345.44 | $0.00 | $345.44 | |
| | | $24,064.74 | $0.00 | $24,064.74 | |

## EXTERIOR D

| | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|
| Remove Screen Porch Panels | 1,056 SF @ $0.70 | $739.20 | $0.00 | $739.20 | |
| Replace Screen Porch Panels | 1,161.6 SF @ $3.60 | $4,181.76 | $0.00 | $4,181.76 | |
| Remove Door, Aluminum, With Screen, 1/2 Louver | 3 EA @ $12.78 | $38.34 | $0.00 | $38.34 | |
| Replace Door, Aluminum, With Screen, 1/2 Louver | 1 EA @ $282.99 | $282.99 | $0.00 | $282.99 | |
| Remove Siding, Cedar, T&G, 1"x 8" | 1,283.9 SF @ $0.25 | $320.98 | $0.00 | $320.98 | |
| Replace Siding, Cedar, T&G, 1"x 8" | 1,605 SF @ $5.19 | $8,329.95 | $0.00 | $8,329.95 | |
| Clean Pressure/Power Wash Bldg. | 6,696.2 SF @ $0.36 ⁺ | $2,410.63 | $0.00 | $2,410.63 | |
| Paint Masonry-per SF, 2 Coats | 6,696.2 SF @ $0.91 | $6,093.54 | $0.00 | $6,093.54 | |
| Paint Trim, Exterior, 2"x10" | 272 LF @ $1.27 | $345.44 | $0.00 | $345.44 | |
| | | $22,742.83 | $0.00 | $22,742.83 | |

PDF created with pdfFactory Pro trial version www.pdffactory.com

## EXTERIOR E

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Screen Porch Panels | 528 SF @ $0.70 | $369.60 | $0.00 | $369.60 | |
| Replace Screen Porch Panels | 580.8 SF @ $3.60 | $2,090.88 | $0.00 | $2,090.88 | |
| Remove Door, Aluminum, With Screen, 1/2 Louver | 3 EA @ $12.78 | $38.34 | $0.00 | $38.34 | |
| Replace Door, Aluminum, With Screen, 1/2 Louver | 3 EA @ $282.99 | $848.97 | $0.00 | $848.97 | |
| Remove Screen Porch Panels | 408 SF @ $0.70 | $285.60 | $0.00 | $285.60 | |
| Replace Screen Porch Panels | 448.8 SF @ $3.60 | $1,615.68 | $0.00 | $1,615.68 | |
| LARGER PATIO TOTAL OF 2 | | | | | |
| Remove Enclosure, Screened | 408 SF @ $0.39 | $159.12 | $0.00 | $159.12 | |
| Replace Enclosure, Screened | 408 SF @ $13.99 | $5,707.92 | $0.00 | $5,707.92 | |
| Remove Siding, Cedar, T&G, 1"x 8" | 1,172.9 SF @ $0.25 | $293.23 | $0.00 | $293.23 | |
| Replace Siding, Cedar, T&G, 1"x 8" | 1,516.5 SF @ $5.19 | $7,869.34 | $0.00 | $7,869.34 | |
| Clean Pressure/Power Wash Bldg. | 5,301.1 SF @ $0.36 | $1,908.40 | $0.00 | $1,908.40 | |
| Paint Masonry-per SF, 2 Coats | 5,309.1 SF @ $0.91 | $4,831.28 | $0.00 | $4,831.28 | |
| Paint Trim, Exterior, 2"x10" | 242 LF @ $1.27 | $307.34 | $0.00 | $307.34 | |
| | | $26,325.70 | $0.00 | $26,325.70 | |

## EXTERIOR F

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Remove Screen Porch Panels | 528 SF @ $0.70 | $369.60 | $0.00 | $369.60 | |
| Replace Screen Porch Panels | 580.8 SF @ $3.60 | $2,090.88 | $0.00 | $2,090.88 | |
| Remove Door, Aluminum, With Screen, 1/2 Louver | 1 EA @ $12.78 | $12.78 | $0.00 | $12.78 | |
| Replace Door, Aluminum, With Screen, 1/2 Louver | 1 EA @ $282.99 | $282.99 | $0.00 | $282.99 | |
| Remove Siding, Cedar, T&G, 1"x 8" | 965.7 SF @ $0.25 | $241.43 | $0.00 | $241.43 | |
| Replace Siding, Cedar, T&G, 1"x 8" | 1,207.25 SF @ $5.19 | $6,265.63 | $0.00 | $6,265.63 | |
| Clean Pressure/Power Wash Bldg. | 3,977.1 SF @ $0.36 | $1,431.76 | $0.00 | $1,431.76 | |
| Paint Masonry-per SF, 2 Coats | 3,977.1 SF @ $0.91 | $3,619.16 | $0.00 | $3,619.16 | |
| Paint Trim, Exterior, 2"x10" | 170 LF @ $1.27 | $215.90 | $0.00 | $215.90 | |
| | | $14,530.13 | $0.00 | $14,530.13 | |

## POOL HOUSE

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Clean Pressure/Power Wash Bldg. | 640 SF @ $0.36 | $230.40 | $0.00 | $230.40 | |
| Paint Masonry-per SF, 2 Coats | 640 SF @ $0.91 | $582.40 | $0.00 | $582.40 | |
| Paint Trim, Exterior, 2"x10" | 80 LF @ $1.27 | $101.60 | $0.00 | $101.60 | |
| | | $914.40 | $0.00 | $914.40 | |

## EXTERIOR HALF WALLS

| | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Clean Pressure/Power Wash Bldg. | 2,750 SF @ $0.36 | $990.00 | $0.00 | $990.00 | |
| Paint Masonry-per SF, 2 Coats | 2,750 SF @ $0.91 | $2,502.50 | $0.00 | $2,502.50 | |

Estimate (MS/B 0410)                                   – 21 –                                   Aug 6, 2007
Claim # 07-10057

PDF created with pdfFactory Pro trial version www.pdffactory.com

|  | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
|  | | $3,492.50 | $0.00 | $3,492.50 | |

## GENERAL

|  | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| Special Local Disposal Fees | 12 LS @ $250.00 * | $3,000.00 | $0.00 | $3,000.00 | |
| Special Minimum Charge, Electrical | 34 LS @ $173.52 | $5,899.68 | $0.00 | $5,899.68 | |
| Special Minimum Charge, Permits and Fees | 6 LS @ $15,207.30 * | $91,243.80 | $0.00 | $91,243.80 | |
| Special Minimum Charge, Paint | 6 LS @ $165.82 | $994.92 | $0.00 | $994.92 | |
| Special Minimum Charge, Drywall, 2 Trips | 6 LS @ $354.36 | $2,126.16 | $0.00 | $2,126.16 | |
| Special Minimum Charge, Cleaning | 68 HR @ $82.18 | $5,588.24 | $0.00 | $5,588.24 | |
| Special Minimum Charge, Acoustic Popcorn Texture | 6 LS @ $134.76 | $808.56 | $0.00 | $808.56 | |
| Special Minimum Charge, Cabinetry | 6 LS @ $195.00 | $1,170.00 | $0.00 | $1,170.00 | |
| Special Minimum Charge, Carpentry, Framing | 6 LS @ $146.25 | $877.50 | $0.00 | $877.50 | |
| Special Minimum Charge, Carpentry, Sheathing | 6 LS @ $140.31 | $841.86 | $0.00 | $841.86 | |
| Special Minimum Charge, Doors | 6 LS @ $152.19 | $913.14 | $0.00 | $913.14 | |
| Special Minimum Charge, Framing, Roof | 6 LS @ $146.25 | $877.50 | $0.00 | $877.50 | |
| Special Minimum Charge, Hardware Repair | 6 LS @ $140.31 | $841.86 | $0.00 | $841.86 | |
| Special Minimum Charge, Insulation | 6 LS @ $233.92 | $1,403.52 | $0.00 | $1,403.52 | |
| Special Minimum Charge, Metal Storage Building | 4 LS @ $115.34 | $461.36 | $0.00 | $461.36 | |
| Special Minimum Charge, Roofing, Hot Materials | 6 LS @ $266.64 | $1,599.84 | $0.00 | $1,599.84 | |
| Special Minimum Charge, Scaffolding | 6 LS @ $183.12 | $1,098.72 | $0.00 | $1,098.72 | |
| Special Minimum Charge, Sitework | 6 LS @ $97.50 | $585.00 | $0.00 | $585.00 | |
| Special Minimum Charge, Soffit & Fascia | 6 LS @ $189.06 | $1,134.36 | $0.00 | $1,134.36 | |
| Special Minimum Charge, Temp. Equipment Rental | 6 LS @ $222.14 | $1,332.84 | $0.00 | $1,332.84 | |
| Special Minimum Charge, Temporary Toilet Rental | 4 LS @ $166.89 | $667.56 | $0.00 | $667.56 | |
| Special Minimum Charge, Windows | 6 LS @ $189.06 | $1,134.36 | $0.00 | $1,134.36 | |
|  | | $124,600.78 | $0.00 | $124,600.78 | |

## OTHER

|  | | Repl. Cost | Depr. | ACV | OP RD |
|---|---|---|---|---|---|
| RECEIPT UNIT 3019 MATERIALS TO REPAIR WATER DAMAGE | 1 LS @ $80.00 * | $80.00 | $0.00 | $80.00 | |
| RECEIPT UNIT 11789 REPAIR CEILINGS, FROM WATER DAMAGE | 1 LS @ $575.00 * | $575.00 | $0.00 | $575.00 | |
|  | | $655.00 | $0.00 | $655.00 | |

|  | Repl. Cost | Depr. | ACV |
|---|---|---|---|
| Estimate Totals | $850,636.10 | $0.00 | $850,636.10 |
| Contractor's Overhead (10%) | $85,063.61 | $0.00 | $85,063.61 |
| Contractor's Profit (10%) | $93,569.97 | $0.00 | $93,569.97 |
| Total With Overhead & Profit | $1,029,269.68 | $0.00 | $1,029,269.68 |
| BROWARD CO | $70,574.52 | $0.00 | $70,574.52 |
| Total With Tax | $1,099,844.20 | $0.00 | $1,099,844.20 |

PDF created with pdfFactory Pro trial version www.pdffactory.com

**Price Database Legend**
All prices from TCD06A0208.
w = Write-in
* = Modified

PDF created with pdfFactory Pro trial version www.pdffactory.com

FILED

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CLARENDON AMERICA INSURANCE
COMPANY,

                  Plaintiff,

v.

CYPRESS PROPERTY INVESTMENTS,
LLC., and CYPRESS TRACE
CONDOMINIUM ASSOCIATION, INC.,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

No. 08 CH 15420

## NOTICE OF FILING

**PLEASE TAKE NOTICE** that on **May 28, 2008**, there was caused to be filed with the

Clerk of the Circuit Court of Cook County, Chicago, Illinois, Chancery Division, the *Return of*

*Service and Affidavit of Service of Summons and Complaint on Defendant, Cypress Trace*

*Condominium Association, Inc.*

_____
Heath Sherman
One of the Attorneys for Plaintiff

Heath Sherman
LEAHY, EISENBERG & FRAENKEL, LTD.
33 W. Monroe Street, Suite 1100
Chicago, Illinois  60603-5317
(312)  368-4554
Firm No. 45875

F:\Case\015501\12924\NOF-01-CHANCERY.DOC

| 2120 | - | Served | | 2121 | - | Served |
| 2220 | - | Not Served | | 2221 | - | Not Served |
| 2320 | - | Served By Mail | | 2321 | - | Served By Mail |
| 2420 | - | Served By Publication | | 2421 | - | Served By Publication |
| **SUMMONS** | | | | ALIAS - SUMMONS | | (Rev. 12/3/01) CCG 0001 |

2008 MAY 28 PM 4:26

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION
LAW DIVISION

CLARENDON AMERICA INSURANCE
COMPANY,

       Plaintiff,

       v.

CYPRESS PROPERTY INVESTMENTS,
LLC., and CYPRESS TRACE
CONDOMINIUM ASSOCIATION, INC.

       Defendants,

CLERK
DOROTHY BROWN.

08CH15420

No. _____

## SUMMONS

To each defendant:   **CYPRESS TRACE CONDOMINIUM ASSOCIATION, INC.**
                 Registered Agent:  Fran L. Wernersbach
                             3045 NW 118th Drive
                             Coral Springs, Florida 33065

    **YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room __802__, Chicago, IL 60602

☐ District 2 – Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 – Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 – Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 – Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 – Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

You must file within 30 days after service of this summons, not counting the date of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT

To the officer:

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| 2120 | - | Served | 2121 | - | Served |
| 2220 | - | Not Served | 2221 | - | Not Served |
| 2320 | - | Served By Mail | 2321 | - | Served By Mail |
| 2420 | - | Served By Publication | 2421 | - | Served By Publication |
| **SUMMONS** | | | ALIAS - SUMMONS | | (Rev. 12/3/01)  CCG 0001 |

WITNESS, **APR 2 5 2008** _____, _____

Atty No.: 45875
Leahy, Eisenberg & Fraenkel, Ltd.
Atty. For: Plaintiff
33 W. Monroe St., Suite 1100
Chicago, Illinois 60603
(312) 368-4554

_Dorothy Brown_
Clerk of Court

Date of Service: _____, _____
(To be inserted by officer on copy left with defendant
or other person)

~~Service by Facsimile Transmission will be accepted at:~~ _____

(Area Code)    (Facsimile Telephone Number)

F:\Case\015501\12924\SUMMONS.CHANCERY - WERNERSBACH.doc

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**BROWARD COUNTY SHERIFF'S OFFICE**
P.O. BOX 9507   FORT LAUDERDALE, FLORIDA 33310

**RETURN OF SERVICE**

| Assignment: 1436 | Service Sheet # | 08-031108 |
|---|---|---|

| CLARENDON AMERICA, ET AL vs. CYPRESS PROPERTY, ET AL | 08-15420 | |
|---|---|---|
| PLAINTIFF | | |
| SUM/COMPLAINT/OS | VS. ** | |
| | DEFENDANT | CASE |

| TYPE OF WRIT | | | HEARING DATE |
|---|---|---|---|
| CYPRESS TRACE CONDOMINIUM, ET AL 3045 NW 118TH DRIVE | | | |
| SERVE | CORAL SPRINGS, FL 33065 | COURT | |

Received this process on
**4/30/2008**
Date

344663
LEAHY, EISENBERY & FRAENKEL, LTD
33 W MONROE STREET #1100
CHICAGO, IL 60603-5317

☒ Served

☐ Not Served – see comments

Date 5/8/08    at    Time 0606

15390    Attorney

On CYPRESS TRACE CONDOMINIUM, ET AL, in Broward County, Florida, by serving the within named person a true copy of the writ, with the date and time of service endorsed thereon by me, and a copy of the complaint, petition, or initial pleading, by the following method:

☐ **INDIVIDUAL SERVICE**

**SUBSTITUTE SERVICE:**

☐ At the defendant's usual place of abode on "any person residing therein who is 15 years of age or older", to wit:

_____, in accordance with F.S. 48.031(1)(a)

☐ To _____, the defendant's spouse, at _____ in accordance with F.S. 48.031(2)(a)

☐ To _____, the person in charge of the defendant's business in accordance with F.S. 48.031(2)(b), after two or more attempts to serve the defendant have been made at the place of business

**CORPORATE SERVICE:**

☐ To _____, holding the following position of said corporation _____ in the absence of any superior officer in accordance with F.S. 48.081

☐ To _____, an employee of defendant corporation in accordance with F.S. 48.081(3)

☒ To FRAN WERNER BACH, as resident agent of said corporation in accordance with F.S. 48.091

☐ **PARTNERSHIP SERVICE:** To _____, partner, or to _____, designated employee or person in charge of partnership, in accordance with F.S. 48.061(1)

☐ **POSTED RESIDENTIAL:** By attaching a true copy to a conspicuous place on the property described in the complaint or summons. Neither the tenant nor a person residing therein 15 years of age or older could be found at the defendant's usual place of abode in accordance with F.S. 48.183

1st attempt date/time: _____    2nd attempt date/time: _____

☐ **POSTED COMMERCIAL:** By attaching a true copy to a conspicuous place on the property in accordance with F.S. 48.183

1st attempt date/time: _____    2nd attempt date/time: _____

☐ **OTHER RETURNS:** See comments

COMMENTS: 5/7/08 1135 AM NO ANS) 5/8/08 0606

You can now check the status of your writ
by visiting the Broward Sheriff's Office
Website at www.sheriff.org and clicking
on the icon "Service Inquiry"

AL LAMBERTI, SHERIFF
BROWARD COUNTY, FLORIDA

BY: _Joe Penendt 14832_ D.S.
Penendt

ORIGINAL

*Circuit* COURT

COUNTY OF *Cook*

| | | |
|---|---|---|
| *Clarendon America, etal* | | Index No. *08-15420* |
| *against* Plaintiff(s) | | **AFFIDAVIT OF SERVICE OF SUMMONS (AND COMPLAINT)** |
| *Cypress Trace Condominium, et al* Defendant(s) | | |

STATE OF FLORIDA, COUNTY OF BROWARD        SS:  The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and works at 2601 West Broward Blvd., Fort Lauderdale, Florida 33312 That on *May 8, 2008*            at *6:06* ⒫ M., at *3045 NW 118 Drive  Coral Springs, FL 33065* deponent served the within summons, *and complaint on* *Cypress Trace Condominium, et al*    defendant therein named,

**INDIVIDUAL 1.** ☐  by delivering a true copy *of each* to said defendant personally; deponent knew the person so served to be the person described as said defendant therein.

**CORPORATION 2.** ☒  a                corporation, by delivering thereat a true copy *of each* to *Fran Werner Bach* personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and knew said individual to be *resident agent*            thereof.

**SUITABLE AGE PERSON 3.** ☐  by delivering thereat a true copy *of each* to                                    a person of suitable age and discretion. Said premises is defendant's—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC. 4.** ☐  by affixing a true copy *of each* to the door of said premises, which is defendant's—actual place of business—dwelling place— usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable age and discretion thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4 5A.** ☐  Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known residence, at                                    and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within Florida State.

**MAILING TO BUSINESS USE WITH 3 OR 4 5B.** ☐  Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class post paid envelope properly addressed to defendant at defendant's actual place of business, at in an official depository under the exclusive care and custody of the U.S. Postal Service within Florida State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

**DESCRIPTION USE WITH 1, 2, OR 3**

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Male | ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

**USE IN NYC CIVIL CT.** ☐  The words "CONSUMER CREDIT TRANSACTION" were prominently displayed at the top of the summons(es) and the additional legend was printed in not less than 12 point bold upper case type on the summons(es) pursuant to 22 NYCRR §208.6(d) and (f).

**MILITARY SERVICE** ☐  I asked the person spoken to whether recipient was in active military service of the United States or of the State of Florida in any capacity whatever and received a negative reply. Recipient *wore ordinary civilian clothes and no military uniform.* The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the recipient is not in military service of Florida State or of the United States as that term is defined in either the State or in the Federal statutes.

Sworn to before me on *May 9 2008*

*Carol J. Trefry*
*Notary Public*

NOTARY PUBLIC-STATE OF FLORIDA
Carol J. Trefry
Commission # DD549410
My Comm. Expires: 05/08/2010

*Joel Powell 14932*
PRINT NAME BENEATH SIGNATURE

License No.

**INSTRUCTIONS: Check appropriate boxes and fill in blanks. Delete inappropriate italicized language and military service allegation if not applicable.**

Case 1:08-cv-20007 Document 10-5 Filed 07/02/2008 Page 1 of 1

ONE DATRON CTR

9100 S. DADELAND BLVD
#1607    305-670-1188

**SERVICE NUMBER** ... | **TO BE SERVED** ... | **ALIAS/PLURIES**
**REFER TO SERVICE NUMBER ABOVE WHEN FILING AS ALIAS OR PLURIES**
**RETURN DATA CHANGE**
**COURT CASE NUMBER** | **PLAINTIFF** | **TRANSACTION #** 252328 | **DATE**
**COURT** | **WRIT TYPE** | **DEFENDANT** | **DEPOSIT**
**COURT DATE** | **POSSESSION MAILED** | **MAIL RETURN TO** | **FEES**
**LINE** | **SERVICES** |
**RETURN DISBURSEMENT NUMBER** | **CO-DEFENDANT (IF ANY)**
**RECEIPT #**

---

## SERVICE INFORMATION

**ALL ACTIONS PERFORMED IN ACCORD WITH APPLICABLE FLORIDA STATE STATUTES**

[X] **SERVED**    **SERVICE DETAILS**

[ ] INDIVIDUAL SERVICE ON "TO BE SERVED"    [ ] EXECUTED PER INSTRUCTIONS    [ ] OTHER: See Comments

[ ] SUBSTITUTE SERVICE:
(Served On A Person Residing Therein of Age 15 Years or Older)    **NAME**

[X] CORPORATE SERVICE:    **NAME** Kevin L. Deeb    **RELATIONSHIP TO "TO BE SERVED"** registered agent
(As Defined in F.S. 48.081 and R.S. 48.091)    **POSITION**

[ ] RESIDENTIAL    [ ] COMMERCIAL    **AT:** _____    **ADDRESS**
Posted After Following Prior Personal Service Attempts:

1. ____ **DATE** ____ **TIME** am/pm **CIRCLE**    2. ____ **DATE** ____ **TIME** am/pm **CIRCLE**

24 HOUR NOTICE POSTED: By ____ **PRINT NAME** ____ **COURT ID#** ____ on ____ **DATE** ____ **TIME** am/pm **CIRCLE** [ ] R [ ] C

[ ] PLACED IN POSSESSION: ____ **NAME** ____ **CONTACT #**

[ ] **NO SERVICE**    **NO-SERVICE DETAILS**

[ ] UNABLE TO LOCATE "TO BE SERVED" AND DOCUMENT COULD NOT LAWFULLY BE SERVED IN ANOTHER MANNER
[ ] "TO BE SERVED" NOT AT GIVEN ADDRESS
[ ] NO SERVICE PER DIRECTIONS OF PLAINTIFF/REPRESENTATIVE    NAME: ____ CONTACT #: ____
[ ] BANKRUPTCY
[ ] ASSETS NOT FOUND
[ ] PARTY PAYING DIRECT PER ABOVE NAMED PLAINTIFF/REPRESENTATIVE
[ ] NO LONGER IN BUSINESS
[ ] FULLY SATISFIED
[ ] OTHER: See Comments    ATTEMPTS ____

## COMMENTS

---

**RETURN**
19 June 08 at 12:05 am/**pm**
Robert Parker, Director and Metropolitan Sheriff
Miami-Dade County, Florida

**PRINT NAME** JC Nuñez    **SIGNATURE** JC Nuñez **COURT ID#** 203

[ ] Deputy Sheriff  [X] Court Support Specialist    **Voice:** (305) 375-5100
140 West Flagler Street, Suite 801, Miami, Florida 33130-1564    **Fax:** (305) 375-5517

**NOTARIZATION OF SERVER'S SIGNATURE (BY SPECIFIC REQUEST AND FEE ONLY)**
[ ] IDENTIFICATION PRODUCED (Specify Below)
[ ] PERSONALLY KNOWN
SWORN TO BEFORE ME ON ____
SIGNATURE ____

EXHIBIT
C

ORIGINAL-CLERK OF THE COURT    YELLOW-PLAINTIFF/REPRESENTATIVE

FILED: JUN 6, 2008
08CV3287
JUDGE KENNELLY
MAGISTRATE JUDGE BROWN
RCC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CLARENDON AMERICAN INSURANCE )
COMPANY, )
　　　　　　　　　　　　　　　　 )
　　　　　　　　Plaintiff, )　　　Case No. _____
　　　　　　　　　　　　　　　　 )
　　v. )　　　Removed from
　　　　　　　　　　　　　　　　 )　　　CIRCUIT COURT OF COOK COUNTY,
CYPRESS PROPERTY INVESTMENTS )　　　ILLINOIS, COUNTY DEPARTMENT,
LLC, and CYPRESS TRACE )　　　CHANCERY DIVISION
CONDOMINIUM ASSOCIATION, INC., )　　　Case No.: 2008 CH 15420
　　　　　　　　　　　　　　　　 )
　　　　　　　　Defendant. )

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 (DIVERSITY)

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants, Cypress Property Investments, LLC and
Cypress Trace Condominium Association, Inc. ("Cypress"), hereby removes to this Court the
state court action described below:

1.　　On April 25, 2008, Plaintiffs, Clarendon American Insurance Company
("Clarendon"), filed an action in the Circuit Court of Cook County, Illinois, County Department,
Law Division, under Case No. 2008-CH-15420, against Cypress. Clarendon's Complaint is
attached hereto as Exhibit A and incorporated by reference.

2.　　On May 8, 2008, Cypress was served with Clarendon's Complaint.

3.　　This Notice of Removal is timely filed under 28 U.S.C. §§ 1441 and 1446, as it is
filed within thirty (30) days after Cypress' receipt of Clarendon's Complaint on May 8, 2008.

4.　　This action is a civil action of which this Court has original jurisdiction under 28
U.S.C. § 1332 and is one which may be removed to this Court by Cypress pursuant to the



EXHIBIT
D

provisions of 28 U.S.C. § 1441, in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      At the time the Complaint was filed, and at all times subsequent thereto, Clarendon was and is an insurance company with its principal place of business in New Jersey.

6.      At the time the Complaint was filed, and at all times subsequent thereto, Cypress Trace Condominium Association, Inc., is a Florida corporation with its principle place of business in Coral Springs, Florida.

7.      Cypress Property Investment, LLC was a Florida limited liability corporation. At the time the Complaint was filed, Cypress Property Investment, LLC was dissolved.

WHEREFORE, Defendant, Cypress Property Investments, LLC and Cypress Trace Condominium Association, Inc., prays that the above-entitled cause, currently pending in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, be removed therefrom to the United States District Court of the Northern District of Illinois and that this cause proceed in this Court as an action properly removed thereto.

Date:  June 6, 2008.

Respectfully submitted,

s/Edward Eshoo, Jr.

_____

Edward Eshoo, Jr.
Michael Childress
Christina M. Phillips
Childress Duffy Goldblatt, Ltd.
515 North State Street, Suite 2200
Chicago, Illinois 60610
(312) 494-0200
Attorneys for Defendant
Cypress Trace Condominium Association, Inc.